## AMERICAN ISSUE PUB. CO. et al. v. SLOAN.

(Circuit Court of Appeals, Sixth Circuit. February 11, 1917.)

No. 3061.

1. TRIAL ⬅278—INSTRUCTIONS—EXCEPTIONS—GENERALITY.
    "Exception to charge as given" is futile, because general.

2. TRIAL ⬅273—INSTRUCTIONS—EXCEPTIONS—TIME.
    Exception to charge, taken after the jury retires, is too late.

3. COURTS ⬅349—FEDERAL COURTS—FOLLOWING STATE STATUTE—CROSS-EXAMINATION.
    Gen. Code Ohio, § 11497, construed as giving a party an unlimited right to cross-examine an adversary called by him, is not a matter of procedure, or a law of evidence, or a rule as to the competency of testimony or witnesses, but is a matter of trial administration, which the federal courts need not follow, under the Conformity Act (Rev. St. § 914 [Comp. St. 1916, § 1537]).

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. APPEAL AND ERROR ☞928(4)—PRESUMPTION—EXISTENCE OF EVIDENCE.

The testimony not being in the record, it must be presumed on appeal, in an action against a publishing company for libel in the publishing of articles written by J., its editor, that there was testimony of such character as to warrant submission of the question of its liability to punitive damages; and refusal of the requested instruction that, relative to malice as a foundation for punitive damages, the jury could not impute any malice of J. to his employers, as the malice of an agent cannot be imputed to his principal; such instruction, to be worth anything, meaning that on the evidence in the case the editor's malice could not be imputed to the company, as the malice of an agent may, under proper circumstances, including his quality and authority, be imputed to his principal, and subsequent approval or ratification by a corporation of the unlawful acts of even a subordinate agent also making it liable to punitive damages.

In Error to the District Court of the United States for the Southern District of Ohio; John E. Sater, Judge.

Action by Thomas L. Sloan against the American Issue Publishing Company and others. Judgment for plaintiff, and certain defendants bring error. Affirmed.

Thomas H. Clark, of Columbus, Ohio, for plaintiffs in error.

Thomas M. Sherman, of Columbus, Ohio, and Thomas L. Sloan, of Washington, D. C., for defendant in error.

Before WARRINGTON, KNAPPEN, and MACK, Circuit Judges.

KNAPPEN, Circuit Judge. [1, 2] Action for libel against the Publishing Company, its general manager, and the editor of one of its publications. In a charge to which no exception was taken, except the general and futile "exception to the charge as given," taken after the jury retired (Pittsburg, etc., R. Co. v. Scherer [C. C. A. 6] 205 Fed. 356, 359, 123 C. C. A. 484; Hindman v. First National Bank [C. C. A. 6] 112 Fed. 931, 934, 50 C. C. A. 623, 57 L. R. A. 108; Wells, Fargo & Co. v. Zimmer [C. C. A. 8] 186 Fed. 130, 132, 108 C. C. A. 242), defendants' liability to both compensatory and punitive damages was submitted to the jury, resulting in verdict against the Publishing Company and its editor, Johnson, for $8,582, which, on motion for new trial, was reduced to $5,000. But two questions are properly before us.

[3] 1. The first relates to the trial court's refusal to permit defendants to call and cross-examine plaintiff under section 11497 of the General Code of Ohio, which provides that:

"At the instance of the adverse party, a party may be examined as if under cross-examination, either orally, or by deposition, like any other witness. The party calling for such examination shall not thereby be concluded but may rebut by counter-testimony."

The trial court held the statute not binding upon the federal courts. In Murray v. Third National Bank, 234 Fed. 481, 491, 148 C. C. A. 247, this specific question was passed without decision. We there, however, construed the latter sentence in the section as giving the right only to rebut the testimony of the witness by showing the facts to be otherwise than stated by him, holding that such right existed without the statute, even as to one's own witnesses. Again, a party has

the right, independently of this statute, to call his adversary as a witness in his own behalf. For present purposes, therefore, the only important question is whether the provision giving a party an unlimited right to cross-examine an adversary called by him is binding on the federal courts.

The result of the Conformity Act (Rev. Stat. § 914; Comp. Stat. 1916, § 1537), the Rules of Decision Act (Rev. Stat. § 721; Comp. Stat. 1916, § 1538), and the Competency of Witnesses Act (Rev. Stat. § 858; Comp. Stat. 1916, § 1464), is to make state statutes relating to the competency of witnesses and the competency of testimony, as well as the state law of evidence generally, binding on the federal courts sitting within such state, except where in conflict with the federal Constitution, statutes, or treaties. McNiel v. Holbrook, 12 Pet. 84, 89, 9 L. Ed. 1009; Ryan v. Bindley, 1 Wall. 66, 68, 17 L. Ed. 559; Connecticut Life Ins. Co. v. Union Trust Co., 112 U. S. 250, 252, 5 Sup. Ct. 19, 28 L. Ed. 708; Ex parte Fisk, 113 U. S. 713, 720, 5 Sup. Ct. 724, 28 L. Ed. 1117; Bucher v. Cheshire R. R. Co., 125 U. S. 555, 583, 8 Sup. Ct. 974, 31 L. Ed. 795; Nashua Bank v. Anglo-American Co., 189 U. S. 221, 228, 23 Sup. Ct. 517, 47 L. Ed. 782; Central Vt. R. R. Co. v. White, 238 U. S. 507, 511, 35 Sup. Ct. 865, 59 L. Ed. 1433, Ann. Cas. 1916B, 252.

On the other hand, it is equally well settled that the personal conduct and administration of the trial on the part of the judge in the discharge of his separate functions is not within the Conformity Act. We refer, in note hereto, to illustrations of this principle contained in the decision of this court in Knight v. Illinois Central R. R. Co., 180 Fed. at page 372, 103 C. C. A. 514.[1]

The ultimate question thus is whether, on the one hand, the statute is to be considered as a matter of procedure, or a law of evidence or a rule as to the competency of testimony, or whether, on the other hand, it is to be regarded as a subject within the personal conduct and administration of the trial on the part of the presiding judge. In our opinion, the statute is not, properly speaking, a matter of procedure, a law of evidence or a rule of the competency either of witnesses

[1] State statutes and state Constitutions forbidding judges in charging juries to express an opinion upon the facts are not binding on the federal courts (Railroad Co. v. Putnam, 118 U. S. 545, 553, 7 Sup. Ct. 1, 30 L. Ed. 257; Railway Co. v. Vickers, 122 U. S. 360, 7 Sup. Ct. 1216, 30 L. Ed. 1161); nor are state statutes providing that written instructions shall be taken by the jury in their retirement and that papers read in evidence may be taken by them (Nudd v. Burrows, 91 U. S. 426, 23 L. Ed. 286); nor provisions that the judge require the jury to find specially upon particular questions of fact (Railroad Co. v. Horst, 93 U. S. 291, 299, 23 L. Ed. 898; McElwee v. Metropolitan Lumber Co. [6th Circuit] 69 Fed. 302, 319, 16 C. C. A. 232); nor statutes requiring that all instructions of the court to the jury shall be in writing (Lincoln v. Power, 151 U. S. 436, 14 Sup. Ct. 387, 38 L. Ed. 224); nor does the statute require the federal court to follow a state practice forbidding the separation of a jury after charge given and before verdict rendered (Liverpool & L. & G. Ins. Co. v. Friedman [6th Circuit] 133 Fed. 713, 716, 66 C. C. A. 543); nor is a state statute dispensing with the requirement that exceptions to the charge be made while the jury is at the bar, and before it retires, binding upon the federal courts (Consumers' Cotton Oil Co. v. Ashburn [5th Circuit] 81 Fed. 331, 333, 26 C. C. A. 436).

or of proof, but relates rather to a mode of examination of witnesses, and is thus a subject within the personal conduct and administration of the trial. The scope and extent of the cross-examination of a witness is peculiarly a matter of trial administration. See 5 Chamberlayne, Mod. Law of Evidence, § 3723.

We think the right of cross-examination attempted to be given by the statute falls, by fair analogy, directly under the ban of the well-settled rule in the federal courts that, subject to certain exceptions not here important, the right to cross-examine a witness is limited to the subject-matter of his direct examination. Philadelphia, etc., R. Co. v. Stimpson, 14 Pet. 448, 461, 10 L. Ed. 535; Houghton v. Jones, 1 Wall. 702, 706, 17 L. Ed. 503, where it is said "the rule has been long settled that the cross-examination of a witness must be limited to the matters stated in his direct examination"; Wills v. Russell, 100 U. S. 621, 626, 25 L. Ed. 607, where in holding that a judgment would not be reversed because cross-examination was not limited to the examination in chief, it was said that "the mode of conducting trials, and the order of introducing evidence, and the time when it is to be introduced, are matters properly belonging very largely to the practice of the court where the matters of fact are tried by a jury"; McKnight v. United States (C. C. A. 6) 122 Fed. 926, 928, 61 C. C. A. 112; Foster v. United States (C. C. A. 6) 178 Fed. 165, 177, 178, 101 C. C. A. 485; Hales v. Mich. Central R. R. Co. (C. C. A. 6) 200 Fed. 533, 538, 118 C. C. A. 627; in which latter case it is said "the general rule of practice in the federal courts limiting cross-examination to the matters embraced in the examination in chief, subject to certain exceptions, is settled." If the statute in question is binding upon the federal courts, no reason is apparent why a statute of a state giving to a party the complete right to cross-examine his adversary's witness, without reference to the subject-matter of the direct examination, would not be equally binding upon the federal courts.

In view of the long-established course of decisions, to some of which we have referred, we cannot doubt that such statute would be held not so binding. We have not overlooked the fact that in Davidson S. S. Co. v. United States (C. C. A. 8) 142 Fed. 315, 73 C. C. A. 425, a similar statute of Minnesota was applied to a suit in the federal courts. In that case, however, the question we are considering, viz. whether the statute was binding upon the federal courts, does not seem to have been raised or considered.

2. The remaining question relates to the refusal, following the charge, of a request that:

"If the jury come to consider the question of malice as a foundation for punitive or exemplary damages, the jury cannot impute any malice if they should find Mr. Johnson had any, to his employers. The malice of an agent cannot be imputed to his principal."

The remarks of the judge in denying motion for new trial seem to indicate that he understood defendants' contention to be that the corporation was not subject to punitive damages in an action for libel, which, of course, is not the law. Washington Gaslight Co. v. Lansden, 172 U. S. 534, 544, 19 Sup. Ct. 296, 43 L. Ed. 543. In this court

the stated ground of the assignment of error is that no officer of the defendant Publishing Company "knew anything about the publications complained of or had in any way authorized them, and there is no evidence whatever to the contrary." The contention seems to be that the alleged libelous articles—three in number—were published upon the sole responsibility and at the sole direction of Johnson, the editor, who wrote them, that Johnson was not an officer of the Publishing Company, and that the applicable rule is that a corporation is not liable in punitive damages for the unlawful acts of a subordinate employé—not wielding the full executive power of the corporation—merely because of the malicious motives of the employé.

The general rule of law invoked is well established. L. S. & M. S. Ry. Co. v. Prentice, 147 U. S. 101, 109, 13 Sup. Ct. 261, 37 L. Ed. 97 et seq.; Memphis Co. v. Cumberland Co. (C. C. A. 6) 231 Fed. 835, 838, 146 C. C. A. 31 et seq., and cases cited in that opinion. As an abstract statement of law, the requested instruction was too broad. The malice of an agent may, under proper circumstances, including the quality and authority of such agent, be imputed to his principal. L. S. & M. S. Ry. Co. v. Prentice, supra; Memphis Co. v. Cumberland Co., supra. For example, a newspaper corporation has been held liable in punitive damages for the malicious conduct of its general manager—although he need not be a member of the corporation—(Post Publishing Co. v. Hallam [C. C. A. 6] 59 Fed. 530, 536, 8 C. C. A. 201); and subsequent approval or ratification by a corporation of the unlawful acts of even a subordinate agent makes it also liable in punitive damages.[2] If, however, the requested instruction means (as it must, to be worth anything) that upon the testimony in the case the editor's malice cannot be imputed to the Publishing Company, we are met with the fact that the testimony is not before us, for the bill of exceptions contains no statement whatever of the evidence respecting this subject, the few lines of testimony which it contains relating solely to the subject of the assignment discussed in the first subdivision of this opinion; and in the absence of such record the presumption would be that there was testimony of such character as to make it proper to submit the question of the Publishing Company's liability to punitive damages, and to refuse the requested instruction. However, were we to look to the charge for information (without deciding that we may properly do so), we find it there recited that while there was undisputed testimony that no officer of the Publishing Company was consulted about the articles complained of, and that the general manager did not know of them before their publication and was not consulted as to the propriety of publishing them, did not see the matter before it was published or the papers sent out, nor the

[2] Press Publishing Co. v. Monroe (C. C. A. 2) 73 Fed. 196, 201, 202, 19 C. C. A. 429, 435, 51 L. R. A. 353, where it is said: "Approval of the conduct of the particular editor who had directed the publication tended to prove ratification of his acts"; L. S. & M. S. Ry. Co. v. Prentice, supra, 147 U. S. at p. 110, 13 Sup. Ct. 261, 37 L. Ed. 97; Bass v. C. & N. W. Ry. Co., 42 Wis. 654, 666, 24 Am. Rep. 437; Ricketts v. C. & O. Ry. Co., 33 W. Va. 433, 439, 10 S. E. 801. 7 L. R. A. 354, 25 Am. St. Rep. 901; Haines v. Schultz, 50 N. J. Law, 481, 484, 14 Atl. 488; Craven v. Bloomingdale, 171 N. Y. 439, 448, 64 N. E. 169.

copies that were to be circulated; on the other hand, there was re-cited testimony that there was no special rule, and no instructions or directions, requiring articles to be submitted to the general manager for approval before their publication, that matters for publication were, in fact, seldom presented to the general manager, who, while "in a way" supervising, gave the editor "wide latitude."

[4] In view of the entire situation, including the absence of the tes-timony generally, we cannot assume that there was not evidence in the case which would justify an inference that the editor, Johnson, was, in effect, a managing editor, and that he, in writing and publishing the alleged libelous articles, acted in reckless disregard of plaintiff's rights (which is express malice),[3] nor can we assume that there was no evi-dence from which the jury might properly find subsequent approval and ratification, on the part of the Publishing Company, of the editor's conduct, especially having in mind that six months elapsed between the publication of the first and second articles, and more than a month between the second and third, and that all three defendants joined in a common defense, including an assertion of the truth of the alleged libelous articles. There seems pertinency in the remark of Judge Sater, in denying the motion for new trial:

"The defendant company was by no means totally ignorant of Johnson's past career as the writer of articles, and it took a long chance when it gave him a loose rein in editorial matters. If it did not know it before, it knew it after the first article appeared."

A distinction between imputed and original liability of a principal by virtue of a subsequent approval or ratification of his agent's acts would, for the purposes of this review, seem overrefined. Upon this meager and unsatisfactory record, we cannot say that the refusal of the requested instruction was reversible error.

This conclusion makes it unnecessary to consider the question, which obtrudes itself, whether the managing editor of a publication, though not the general manager or an officer of the publishing cor-poration, so far wields the executive authority, and is so far the other self of the corporation, with respect to such publications, as that his reckless disregard of the rights of those made the subject of such publications, as distinguished from private malice or personal grudge, is imputable as matter of law to the corporation, regardless of its approval or ratification.

In nothing we have written have we intended to express any opin-ion of our own upon the merits of the case, or as to the fault or free-dom from fault of either the editor or the Publishing Company.

The judgment of the District Court is affirmed.

[3] L. S. & M. S. Ry. Co. v. Prentice, supra, 147 U. S. at p. 113, 13 Sup. Ct. 261, 37 L. Ed. 97; Milwaukee, etc., Ry. Co. v. Arms, 91 U. S. 489, 495, 23 L. Ed. 374; Press Pub. Co. v. Monroe, supra, 73 Fed. at p. 200, 19 C. C. A. 429, 51 L. R. A. 353; Maclean v. Scripps, 52 Mich. 214, 222, 17 N. W. 815, 18 N. W. 209.