### HINES v. SMITH. *

(Circuit Court of Appeals, Sixth Circuit. January 7, 1921.)

No. 3432.

1. **Railroads ⬯5½, New, vol. 6A Key-No. Series—Substitution of Director General proper.**

In an action against a railroad company for injuries sustained while the railroad was operated by the Director General of Railroads, an order substituting him as defendant was not erroneous.

2. **Parties ⬯63—Request by substituted defendant for time to plead should have been made immediately on substitution.**

In an action against a railroad company, where the Director General of Railroads was substituted as defendant before trial, if he required further time for the preparation of his defense, a request therefor should have been made immediately after the order of substitution, and an objection after the case was stated to the jury was too late.

3. **Attorney and client ⬯70—Presumption held warranted that counsel for railroad company represented Director General after substitution.**

In an action against a railroad company for injuries sustained during the period of federal control, where the railroad company's answer denied negligence on the part of the Director General, his agents or employés, and, after substitution of the Director General, the counsel filing the answer assisted in impaneling the jury and stated the substituted defendant's case to the jury, and on its behalf objected to introduction of any evidence, the court was warranted in presuming that they repre-

⬯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Certiorari denied 254 U. S. —, 41 Sup. Ct. 448, 65 L. Ed. —.

sented the Director General, especially where there is no claim to the contrary.

**4. Parties** ⟨key⟩**63—Objection to proceeding because there were no issues between plaintiff and substituted defendant held without merit.**

Where a railroad company's answer in an action for injuries sustained during the period of federal control alleged that the Director General of Railroads should be substituted as a defendant, and denied negligence on the part of company or the Director General of Railroads, and alleged contributory negligence on the part of the plaintiff, and no other possible defense was subsequently suggested, an objection to proceeding with the trial, after the substitution of the Director General, because there were no pleadings and issues between him and plaintiff, was without merit, even if made in time.

**5. Railroads** ⟨key⟩**330(3)—Traveler must take precautions, notwithstanding omission of signals.**

A traveler, approaching a railroad crossing, must take ordinary and reasonable precautions for his own safety before crossing, and the failure of the engineer of an approaching train to give the ordinary crossing signals will not relieve him from using his faculties of sight and hearing for his own protection.

**6. Railroads** ⟨key⟩**327(2)—Traveler, who should have seen and heard train, not permitted to deny that he did.**

A traveler at a highway crossing will not be permitted to say that he did not see a train, which he must have seen, had he looked, and did not hear that which he must have heard, had he listened.

**7. Railroads** ⟨key⟩**331(3)—Open gates and presence of gateman affect question of contributory negligence.**

That a railroad company had maintained gates at a crossing for some time prior to an accident, and that they were open and the gateman in full view as a traveler drove on the crossing, did not relieve him from exercising ordinary and reasonable care for his own safety, but did materially affect the question of contributory negligence.

**8. Railroads** ⟨key⟩**350(17)—Negligence of automobile driver at crossing with open gates held question for jury.**

Though, as an automobile driver approached a crossing at which gates had been maintained, there was nothing to distract his attention, and he could have seen an approaching train, the question of contributory negligence was for the jury, where the gates were open and the gateman in full view.

**9. Witnesses** ⟨key⟩**275(2)—Plaintiff, suing for death, cannot be cross-examined as to amount of deceased's income tax return, for which she was not responsible.**

Conceding that, in an action for death, deceased's income tax returns would have been competent in chief on the question of damages, cross-examination of plaintiff as to such returns was neither competent nor proper, where there was nothing to show that she was responsible for any failure of deceased to make a full and complete return.

**10. Appeal and error** ⟨key⟩**979(5)—Denial of new trial for excessiveness of damages reviewable only for abuse of discretion.**

The overruling of a motion for a new trial on the ground that the verdict is so excessive as to indicate passion or prejudice is addressed to the discretion of the trial court, and not reviewable on writ of error, except for abuse of discretion.

**11. New trial** ⟨key⟩**76(5)—Denial for excessiveness of damages not abuse of discretion, when undisputed evidence supports recovery.**

Where the undisputed evidence as to the earning capacity of deceased in connection with his natural expectation of life would amply sustain the award of damages, the denial of a new trial on the ground that the verdict was excessive was not an abuse of discretion.

---

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error from the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Action by Kathryn McL. Smith, administratrix of George J. Smith, deceased, against the Erie Railroad Company, in which the Director General of Railroads and later Walker D. Hines, Agent under Designation of the President, were substituted as defendants. Judgment for plaintiff, and the last-named defendant brings error. Affirmed.

This proceeding in error is brought in this court to reverse the judgment of the District Court, Northern District of Ohio, Eastern Division, in an action by Kathryn McL. Smith, administratrix of the estate of George J. Smith, deceased, to recover damages from the Erie Railroad Company, for wrongfully and negligently causing the death of her intestate, George J. Smith, who was struck and killed by a passenger train of the Erie Railroad Company at the Main street crossing of the tracks of that company at Niles, Ohio. Later, and before the trial of this action, Walker D. Hines, Director General of Railroads, was substituted as defendant in the place of the Erie Railroad Company.

The petition averred, among other things, that plaintiff's intestate on the 5th day of February, 1918, was driving a closed Ford car on Main street, in the direction of the center of Niles; that when he had reached and was upon the railway crossing his automobile was struck by a passenger train, owned, operated, and controlled by the defendant company, and traveling from Cleveland, Ohio, to Niles, Ohio, which passenger train was operated at a high and dangerous rate of speed, to wit, 30 to 35 miles an hour, in violation of an ordinance of the city of Niles limiting the speed of trains through that city to 4 miles an hour over street crossings where gates were not operated, and 6 miles an hour where gates were in operation, and without giving adequate warning of its approach by whistle, bell, or otherwise; that for some time prior thereto the railway company had maintained gates at this Main street crossing, but that the watchman in charge of this crossing at the time this train approached negligently failed to lower these gates, or to give warning in any other method of the approach of a train; that the watchman stationed at this crossing was old, inefficient, and incapable of properly performing the duties of a crossing watchman.

The defendant by answer admitted its corporate character; admitted that plaintiff's decedent was riding in a motor car in the city of Niles, along Main street, and while attempting to cross the railway tracks on that street in a negligent and careless manner ran his car in the side of a passing train, thereby receiving certain injuries, and that he has died. For its first defense it denies that it was guilty of any negligence, but, on the contrary, exercised due care and caution.

For a second defense it averred that its railway and trains were under the operation of William G. McAdoo, Director General of Railroads of the United States; that it was not a proper defendant to this action; that it had filed a motion asking the court to substitute the Director General of Railroads as defendant, which motion had been overruled by the court; that for the purpose of retaining and protecting its rights in respect to said motion, it averred as a defense that said William G. McAdoo, Director General of Railroads, should be substituted as a defendant; that said Erie Railroad Company, under the direction and control of the Director General of Railroads, was engaged in interstate commerce; that the train that struck and injured plaintiff's intestate was an interstate train, and that the ordinance of the city of Niles was unconstitutional and void as to said train, for the reason that the speed limit required by the ordinance and the enforcement thereof would constitute "an unreasonable hindrance to, a direct burden on, and an unlawful interference with, interstate commerce."

For a third defense it averred that if it, or the Director General of Railroads, his agents or employés, were at all negligent in the premises, which it expressly denies, then in that event plaintiff's decedent was guilty of negli-

gence, directly and proximately contributing to bring about his injuries, in that he negligently and carelessly failed to have his automobile under control, and was negligently and carelessly operating the same at a high and dangerous rate of speed upon said crossing, and was negligently and carelessly attempting to pass in front of said train, when he knew, or by the exercise of even slight care and caution could have known, of the approach of said train, and that he negligently and carelessly failed to heed the warnings and signals that were given him to apprise him of the approach of said train, and that he negligently and carelessly failed to stop, look, or listen to ascertain if a train were approaching, or to take any precaution whatsoever for his own safety, although he was an experienced driver of automobiles and was thoroughly familiar with this crossing.

The fourth defense more specifically avers the authority and control of the Director General of the United States over defendant's railroad and transportation facilities at the time of the accident resulting in the injuries to plaintiff's decedent.

Upon the issue so joined the jury returned a verdict for the plaintiff, assessing damages at $45,000, upon which verdict judgment was entered for the full amount thereof. A motion for new trial was filed and overruled, and exceptions noted..

Stephen S. Conroy, of Youngstown, Ohio (Hine, Kennedy, Manchester, Conroy & Ford, of Youngstown, Ohio, on the brief), for plaintiff in error.

D. F. Anderson, of Youngstown, Ohio, for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge (after stating the facts as above). [1] It is clear that the order substituting the Director General as defendant was not erroneous. Northern Pacific Railroad Co. et al. v. North Dakota ex rel., 250 U. S. 135, 39 Sup. Ct. 502, 63 L. Ed. 897; Erie Railroad Co. et al. v. Frank Caldwell, 264 Fed. 947 (C. C. A. 6). The claim is now made that, notwithstanding the Director General of Railroads was the proper defendant and should have been substituted, the substitution was made at an improper time, to the surprise and disadvantage of the substituted defendant.

[2] It appears from the bill of exceptions that after the jury had been impaneled and sworn, and the case was stated to the jury by counsel for the respective parties, counsel for the substituted defendant objected "to any testimony or evidence being offered in the trial of this case, because of the substitution of the Director General as party defendant, and because no pleadings or issues are made up as between the parties now in the trial," which objection was overruled, and exceptions noted. This objection came too late. If the substituted defendant required further time for the preparation of his defense, that request should have been made immediately after the order was entered substituting him as defendant.

[3] It is true that the motion to dismiss and the answer was filed on behalf of the Erie Railroad Company, and if counsel had retired from the case when that defendant was dismissed from the action no presumption would arise that they represented the Director General of Railroads in this particular case, regardless of what relation they may have sustained to him as general or local counsel; but the fact that the third defense of the answer prepared and filed by them denied all neg-

ligence on the part of the Director General of Railroads, his agents or employés, taken in connection with the further fact that, after the Erie Railroad Company had been dismissed from the suit, the same counsel assisted in the impaneling of the jury and stated the substituted defendant's case to the jury, and on behalf of the substituted defendant objected to the introduction of any evidence whatever, was sufficient to warrant the court in the presumption that they also represented the Director General of Railroads in this particular case, and no claim is now made to the contrary. This being true, their conduct in permitting the jury to be impaneled and sworn, and stating the case to the jury, evidenced an intent and willingness on their part, as counsel for the substituted defendant, to proceed with the trial of the issues joined, without any alteration or change in the pleadings.

[4] But, even if this objection were made prior to the impaneling of the jury and the statement of the case, as it appears from the opinion of the trial judge on the motion for a new trial may have been done, nevertheless it was without merit. Counsel, not content with the action of the court in overruling the motion to substitute as defendant the Director General of Railroads, perpetuated the object and purpose of that motion in the second defense of its answer, and averred as a defense that said William G. McAdoo, Director General of Railroads, should be substituted as a defendant. This averment was in effect a continuing demand that the court should correct any error it may have made in the overruling of this motion, and order the substitution. It would therefore seem that counsel is hardly in position to complain of the court doing the very thing it was still insisting the court should do.

The third defense of the answer, not only denied negligence on the part of the Erie Railroad Company or the Director General of Railroads, his agents and employés, as heretofore stated, but also averred that Dr. Smith was guilty of specific acts of negligence directly contributing to his own injuries. Counsel, although more than a year has elapsed since the trial, has not suggested, and the court is unable to conjecture, what other defenses might have been available to the substituted defendant. The same counsel that represented the substituted defendant in the trial of this action had then had full and fair opportunity to investigate the facts of this case, and to procure the evidence necessary to establish these defenses. Therefore the substitution of this defendant could in no way apparent, even at this late date, operate to the disadvantage of counsel in the presentation of either the facts or the law pertinent thereto. Missouri, K. & T. Railway Co. v. Wulf, 226 U. S. 570, 33 Sup. Ct. 135, 57 L. Ed. 355, Ann. Cas. 1914B, 134; Keystone Coal & Coke Co. v. Fekete (C. C. A. 6) 232 Fed. 72, 146 C. C. A. 264. In Railway Co. v. Wulf, supra, the action was brought in the name of the beneficiary, and the personal representative was substituted. In Keystone Coal & Coke Co., supra, the action was brought in the name of the personal representative, and the beneficiaries were substituted. While the questions determined in these cases are not identical with the question presented in this case, nevertheless the underlying principle is the same.

In this case, the railroad company was still the owner of its own properties, but temporary possession and control of the same had been taken by the President of the United States, through the Director General of Railroads, and the president and directors of this corporation continued the operation of defendant's railroad under the direction and supervision of such Director General, so that the president and directors of this railroad company were acting for and on behalf of the Director of General of Railroads for all purposes connected with the operation of its railroad. A receiver would have occupied practically the same legal relation to this company and its property as did the Director General, and certainly the substitution of a receiver as defendant, or the substitution of the railroad company in place of the receiver, at the termination of the receivership, would not change the issue in any respect, or necessarily require a postponement of the trial, especially where the same counsel represented both. Bainum v. Bridge Co. (C. C.) 141 Fed. 179.

Indeed, it would seem that under the provisions of section 11363, General Code of Ohio, in which state this cause of action arose, and also under the provisions of sections 948 and 954 of the Revised Statutes of the United States (Comp. St. §§ 1580, 1591), this substitution might have been made as well after judgment as before trial. As a matter of fact, in this case the present plaintiff in error was substituted as defendant after judgment, for identically the same reason that the Director General of Railroads was substituted as defendant before the trial of the cause.

At the close of plaintiff's evidence the defendant made a motion for a directed verdict, which motion was overruled and exceptions noted. This motion was renewed at the close of all the evidence. The motion for directed verdict was based upon the claim by defendant that the uncontradicted evidence shows that it was still daylight; that there was no confusion at the crossing; that there were no trains in sight; that there was nothing to distract Dr. Smith's attention from the oncoming train; that he could have seen this approaching train when he was 100 feet or more from the crossing, and therefore the fact that he did not see it conclusively establishes his negligence as a matter of law.

[5, 6] It is undoubtedly the duty of a traveler approaching a railroad crossing to take ordinary and reasonable precaution for his own safety before attempting to cross a railroad track, and the failure of the engineer of an approaching train to give the ordinary crossing signals will not relieve the traveler from using his faculties of sight and hearing for his own protection. Nor will he be permitted to say that he did not see what he must have seen, had he looked, or that he did not hear what he must have heard, had he listened. This principle of the law of negligence is too well established to require the citation of authorities in its support, and if nothing else appeared in this case, except the failure of the engineer to sound the whistle or ring the bell, this judgment would necessarily have to be reversed for error of the court in overruling the motion for directed verdict.

[7] But there is evidence in this case tending to prove that the

defendant was not only guilty of passive negligence in failing to sound the whistle or ring the bell of the approaching train, but was also guilty of such negligence as would amount to an assurance of safety to the traveler, and a direct invitation to the public to use the crossing, notwithstanding the train was in the immediate vicinity and approaching at a high and dangerous rate of speed. The evidence is uncontradicted that the defendant had maintained gates at this crossing for some time prior to the accident, and that at the time Dr. Smith drove upon the crossing the gateman was in full view and the gates were open. While this fact did not relieve the traveler from exercising ordinary and reasonable care for his own safety, yet it does materially affect the question of contributory negligence. Thompson on Negligence, § 1613. In the case of Blount v. Grand Trunk Ry. Co., 61 Fed. 375, 9 C. C. A. 526 (C. C. A. 6), it is said in the opinion:

"It is undoubtedly true that the failure to lower the gates modifies the otherwise imperative duty of travelers, when they reach a railway crossing, to look and listen, and the presence of such a fact in the case generally makes the question of contributory negligence one for the jury, when otherwise the court would be required to give a peremptory instruction for the defendant"—citing Burns v. Rolling Mill Co., 65 Wis. 312, 315, 27 N. W. 43; Stapley v. Railway Co., L. R. 1 Exch. 21; Glushing v. Sharp, 96 N. Y. 676; Cleveland, C., C. & I. Railway Co. v. Schneider, 45 Ohio St. 678, 17 N. E. 321.

It is also said in the opinion in the Blount Case, supra, that:

"The fact is much more important where the traveler is driving a horse and vehicle than where he is walking, because in the former case his attention is necessarily divided between the control of the horse and observation of the track, and his reliance upon the gates and the flagman must, in the nature of things, be greater than in the case of a pedestrian."

In the case of Erie R. R. Co. v. Schultz, 183 Fed. 673, 106 C. C. A. 23 (C. C. A. 6), it is said:

"In this court it has been distinctly recognized that the opened gate is in the nature of an invitation to cross, and that the presence of such fact in the case generally makes the question of contributory negligence one for the jury, and that the same degree of watchfulness cannot be expected from the driver of a loaded wagon as from a pedestrian."

In the case of Pennsylvania Co. v. White, 242 Fed. 437, 155 C. C. A. 213 (C. C. A. 6), this court said:

"It is recognized by decisions of this court that the open gate is in the nature of or analogous to an invitation to the traveler to cross, but that it is still incumbent upon him to exercise his senses of sight and hearing for his protection as soon as, and as far as, a man of ordinary prudence would do under similar circumstances. * * * We think it apparent * * * that the court left to the jury the question whether, under all the circumstances, plaintiff was guilty of negligence contributing to the accident."

In the case of Cleveland, C., C. & I. Railway Co. v. Schneider, 45 Ohio St. 678, 17 N. E. 321, the Supreme Court of Ohio held that:

"An open gate, with the gateman in charge, is notice of a clear track and safe crossing, and in the absence of other circumstances, when the gates are open and the gateman present, it is not negligence in persons approaching the crossing with teams to drive at a trot, or pass onto the tracks through the open gates without stopping to listen, though the view of the tracks on either

side of the crossing is obstructed; nor in such case is their failure, when at a distance of 25 feet from the track, to look for locomotives 150 feet or more from the crossing negligence, though they could have been seen."

In the opinion (45 Ohio St. at page 697, 17 N. E. 328), it is said:

"It [the request to charge] assumes that there were no other facts or circumstances in the case which might properly enter into the question of contributory negligence, and in effect excluded from the jury in its consideration of the question the fact that gates were maintained at the crossing, and stood open in the presence of the gateman having control, thus signifying a clear track, and amounting to an invitation to those about to cross over to do so."

[8] It would seem from these authorities that the law is well settled in this jurisdiction, and also in the state of Ohio, where this accident occurred, that, where safety gates maintained at street crossings are open at the time of the accident, contributory negligence is, except in extraordinary cases, a question for the jury. Counsel for plaintiff in error practically concede this, but insists that the facts in this case are practically identical with the facts in the case of Blount v. Grand Trunk Railway Co., supra. In that case, however, the court clearly distinguished between a person on foot and a person driving a horse and vehicle.

This distinction applies with peculiar force in this particular case. Dr. Smith was driving an automobile. An automobile, unless skillfully and carefully driven, is a dangerous instrumentality, not only to the driver and occupants, but also to other persons lawfully upon the highway. Naturally a person driving an automobile must give more attention to its control and operation than would ordinarily be necessary in driving a horse and vehicle, unless the horse has become fractious, or is frightened and difficult to control. If, as is said in the case of Blount v. Grand Trunk Ry., supra, "the fact [that the safety gates are open] is much more important where the traveler is driving a horse and vehicle than where he is walking," certainly there would be like reason for distinguishing between a pedestrian and the driver of an automobile. Therefore the facts in that case, in which recovery was denied a pedestrian who deliberately, on a starlit night, walked directly in front of an approaching train but 75 feet distant from him when he was still 15 feet away from the track are in no sense identical with the facts in the case at bar. The question of contributory negligence under all the facts and circumstances of this case was undoubtedly a question for the jury, and the trial court did not err in refusing to direct a verdict.

What has been said in reference to this motion practically disposes of the exception to that part of the charge of the court in reference to contributory negligence. The court charged the jury that, notwithstanding the safety gates were open, it was the duty of Dr. Smith, in undertaking to cross the tracks of this railroad, to exercise ordinary care for his own safety and protection, and if he failed in so doing, and the collision resulted directly therefrom, as one of the contributing causes, then plaintiff could not recover, and again, in connection with the charge in reference to the open gates, said:

"Now, that does not mean that the decedent must not exercise what we call ordinary care, but the test is what an ordinarily careful and prudent traveler upon a highway is accustomed to do in the presence of a situation of that kind, and it is entirely different from what an ordinarily careful and prudent person is accustomed to do, and would do, and the law would require him to do, if he was approaching a highway crossing at grade, at which no gates had been established, and at which no gateman had been placed in charge."

The defendant also took exceptions to several other specific paragraphs of the charge as given, but it is unnecessary to review these exceptions in detail. In the opinion of this court, the charge, taken as a whole, was not misleading in any particular, and fully and fairly covered all of the issues in this case.

[9] The defendant offered to show by cross-examination of the plaintiff the gross amount of the federal income tax return made by Dr. Smith for 1915, 1916, and 1917, to which the plaintiff objected, and the objection was sustained by the trial court, upon the theory that such evidence would come within the prohibition of section 3167, R. S. (Comp. St. § 5887), and paragraph 6 of the executive order issued by the President, July 28, 1914, which paragraph prescribes the regulations under which income tax returns may be subject to inspection. If it were conceded that the evidence in relation to the income tax returns made by Dr. Smith in the years above mentioned would have been competent in chief, it does not necessarily follow that it would be competent or proper to attempt the introduction of this proof on cross-examination of this witness.

If Dr. Smith had survived his injuries, and had testified in reference to his earnings as a physician during these years, naturally he might be cross-examined in reference to the gross return made by him to the federal authorities, as reflecting upon the credibility of his evidence. But whether he did or did not make a full disclosure of his gross income in the three years immediately preceding his death cannot prejudice the rights of this plaintiff or affect her credibility, for she cannot be held responsible for any neglect or default on his part to make such returns.

The trial judge, in his memorandum opinion on motion for new trial, said that her testimony on cross-examination "tended to show that an income tax return had been made, and that she participated in the making thereof and had knowledge of its contents." We are unable to find any such evidence in the bill of exceptions in this case, which the trial court has certified contains all of the evidence offered and received upon the trial. It is possible that he was confused somewhat by the evidence tending to show that she had kept the books and records of professional services performed by him; but, however that may be, there is nothing in this bill of exceptions tending to show that she was responsible for any failure of Dr. Smith to make a full and complete income tax return. Therefore the objection was properly sustained to her cross-examination on this subject. American Issue Publishing Co. et al. v. Sloan (C. C. A. 6) 248 Fed. 251–254, 160 C. C. A. 329, and cases there cited.

Moreover, even had the proposed cross-examination been competent, it is at least difficult to see that its exclusion could have been harmful. The decedent's books of account (including daybook, book of charges, ledger, cashbook, and all other papers containing charges made and receipts had for services by decedent during the years 1915, 1916, and 1917), which were produced under order of the court made on defendant's motion (full and free opportunity to examine them in detail being given defendant's counsel), showed, in connection with undisputed testimony, bank deposits for professional services aggregating for the year 1915, $7,093; for 1916, $8,595; and for 1917, $10,925. Plaintiff testified with reference to the books and described the manner and method of keeping these accounts and her own services in that connection. There was undisputed evidence that decedent was a successful practitioner of medicine, and that his practice was growing larger each year; his bank deposits during 1917 being nearly $4,000 in excess of those for 1915. The undisputed evidence tended to show that he was earning a much larger income in the aggregate than his bank deposits. He was but 43 years old. If plaintiff's estimate of an approximate earning of $100 per day during the last year preceding decedent's death were to be entirely disregarded, the undisputed evidence of his earning capacity in connection with his natural expectation of life would amply sustain the award of damages.

[**10, 11**] The overruling of a motion for new trial, upon the ground that the verdict is so excessive as to indicate passion or prejudice on the part of the jury, is addressed to the discretion of the trial court, and therefore not reviewable upon error, except for abuse of discretion. Robinson v. Van Hooser (C. C. A. 6) 196 Fed. 620, 627, 116 C. C. A. 294; Pugh v. Bluff City Excursion Co. (C. C. A. 6) 177 Fed. 399, 101 C. C. A. 403. What has just been said in reference to the earning capacity of Dr. Smith clearly demonstrates that the trial court did not abuse its discretion in overruling the motion for a new trial upon the ground that the verdict is excessive.

For the reasons above stated, the judgment of the District Court is affirmed.