## WEST TENNESSEE GRAIN CO. v. J. C. SHAFFER & CO.

(Circuit Court of Appeals, Sixth Circuit. April 1, 1924.)

No. 3942.

1. **Appeal and error ⊙⟶1006(4)—Verdict in case tried five times should be allowed to stand, if possible.**

Verdict in case which has been tried five times should be allowed to stand, unless the law imperatively requires reversal.

2. **Sales ⊙⟶89—Burden of proof to show modified agreement on defendant in action for failure to deliver.**

In an action for damages for failure to deliver corn in October, where defense was that plaintiff agreed to accept November delivery, the burden was on defendant to establish this practically affirmative defense.

3. **Appeal and error ⊙⟶1026—Errors not considered, unless they materially hamper fair trial.**

In action for damages for failure to deliver corn in October, where defense was agreement to accept November delivery, errors on the trial should not be considered as prejudicial, unless they materially hampered fair trial of this issue.

4. **Evidence ⊙⟶420(5)—Preliminary negotiations as to conditions of delivery held merged in accepted order for goods.**

Where, in action for failure to deliver corn, defendant claimed that delivery was conditional on getting corn and cars within time limit, *held* that all preliminary negotiations were merged in written contract, which was in form of an accepted order and contained no such condition.

5. **Appeal and error ⊙⟶1050(1)—Admission of correspondence part of res gestæ, but open to objection as self-serving, held not prejudicial, if error.**

In action for breach of contract to deliver corn in October, where defendant claimed plaintiff's agent agreed to accept delivery in November as satisfaction of contract, and agent denied this, any error of court in

⊙⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

permitting plaintiff to put in evidence letters and telegrams sent by such agent to plaintiff, which purported to recite dealings with defendant during that period, and which mentioned no such arrangement, was not reversible.

6. **Courts** ⬡═348—**Federal court not bound to follow state rule as to showing good character of witnesses.**

Federal court in Tennessee was not bound to follow Tennessee rule permitting party to show good character and reputation of his witnesses, though their character for veracity was not attacked.

7. **Evidence** ⬡═455—**Parol evidence held admissible to show kind of corn sold.**

The principle that written contracts cannot be varied by parol did not apply to proofs offered by vendor in action for damages for breach of contract to deliver corn, to show that by "corn" in contract parties meant corn of current crop, rather than old corn, which would command higher price.

8. **Appeal and error** ⬡═1056(4)—**Exclusion of evidence held not prejudicial, in view of verdict.**

In action for breach of contract to deliver corn, error of court in excluding evidence that the parties meant corn of current crop rather than old corn, which would command higher price, *held* not prejudicial; there being no evidence substantially indicating that the true and smaller measure of damages would have led to smaller verdict than one rendered.

9. **Appeal and error** ⬡═1068(5)—**Refusal of request as to instructions held immaterial, in view of verdict.**

In an action for breach of contract to deliver corn in October, where defense was that plaintiff agreed to accept delivery in November as satisfaction, refusal of request as to appropriate action of jury, if it found that November contract of settlement was made, was immaterial, where under general charge of court it was clear that verdict amounted to finding that November settlement was not made.

10. **Appeal and error** ⬡═1068(1)—**Instructions expressing court's own opinion too forcefully held not to require reversal.**

Where the verdict reached was inevitable, and did no more than plain justice, judgment will not be reversed because court in its instructions expressed its own opinions about facts and credibility of respective witnesses so forcefully, and presented the evidence so far in an augmentative way, that under ordinary circumstances reversal would be compelled, in view of Judicial Code, § 269, as amended by Act Feb. 26, 1919 (Comp. St. Ann. Supp. 1919, § 1246).

In Error to the District Court of the United States for the Western District of Tennessee; J. W. Ross, Judge.

Action by J. C. Shaffer & Co. against the West Tennessee Grain Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

T. O. Morris and W. S. Draper, both of Union City, Tenn. (Spragins & Hewgley, of Jackson, Tenn., on the brief), for plaintiff in error.

C. V. Clark, of Chicago, Ill. (Bond & Bond, of Jackson, Tenn., and Jeffery, Campbell & Clark, of Chicago, Ill., on the brief), for defendant in error.

Before DENISON and DONAHUE, Circuit Judges, and JONES, District Judge.

DENISON, Circuit Judge. [1] This case is the second time in this court. The facts are fully stated in the former decision, 271

⬡═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Fed. 820, to which reference may be made. As they must be considered to be impliedly established by the verdict under review, they are, in brief:

The plaintiff in error, defendant below, operated a grain elevator in a small town in western Tennessee. In August it sold 15,000 bushels of corn, for October delivery at Chicago, at $1.30 per bushel. October passed without delivery, and the seller was without any legal justification for its breach. In the meantime, the market price had largely increased and was continuing to advance. About November 7th the vendor, having accumulated the corn and professing anxiety to perform as soon as cars could be had, took up with the vendee's agent negotiations for permitting, as full performance, November delivery in Memphis. These negotiations failed and no agreement was reached (so the jury thought). At that time the vendor could have sold to others at a profit of at least $6,300 over the contract price, and the prices thereafter continued to increase. The vendor, therefore, plainly gained more than $6,000 by breaking its contract, and this, with interest, would have amounted at the time of the last trial, to about $8,000. Plaintiff's evidence at the trial, and not directly disputed, as to the market values at Chicago, showed its actual damage, including interest, to be about $16,000. The case has been tried five times, and on the last trial the jury gave the plaintiff a verdict for $8,000. Clearly such a verdict and judgment should be allowed to stand, unless the law imperatively requires reversal.

[2, 3] The great matter of controversy during all the trials has been whether the negotiations for November delivery did or did not result in a contract to that effect, thus excusing the vendor's October default and throwing the burden of the breach upon the vendee, because it denied such later contract and eventually refused to consider any later delivery. As the market turned, the original contract was disastrous for the vendor; its defense was, in effect, an attempt by confession and avoidance to escape this loss and to deprive the purchaser of its market gain; the burden was upon the vendor to establish this practically affirmative defense; and alleged errors on the trial should not be considered as prejudicial, unless they materially hampered a fair trial of this issue.

[4] It bears upon the probability of this extension contract, as well as upon the question of original liability, to know whether the original contract was for absolute delivery, or, as the vendor claims, was conditional upon its ability to get the corn and cars within the time limit. Without discussing the facts, we think it entirely clear that all preliminary negotiations were merged in the written contract, which was in the form of an accepted order, and which contained no such conditions. Nor can we regard the offered parol proof as tending to show a separate contract, or a condition precedent to the taking effect of this one.

[5] Defendant claimed that on November 7th a definite oral agreement was made with Hirshey, plaintiff's agent, to accept November delivery at Memphis as a satisfaction of the contract. Hirshey, as a witness, denied it. Plaintiff was then permitted to put in evidence

letters and telegrams sent by Hirshey to plaintiff on November 8th and 9th, which purported to recite his dealings with defendant during that period, and which mentioned no such arrangement. Error is assigned upon the admission of these letters. The rule which permits proving statements made at or about the time of the occurrence, as a part of the res gestæ and in corroboration of the later testimony of the speaker, tends to come in conflict with the rule which forbids proof of self-serving declarations. While it is not accurate to say that the decision of this conflict is a matter of discretion with the trial judge, yet there must be an extreme and important breach of the applicable rule to justify a reversal and a new trial on this ground. It is enough to say that we are not satisfied that there was on this trial any such breach. It was arguable, if not argued, that Hirshey's testimony denying the contract was a story fixed up for the trial. These reports to his principal were made at the time of the occurrence, and to have made such reports and purposely omitted any reference to a settlement contract which he had made, and to do this in order to make evidence in a future lawsuit, would have shown a prevision beyond ordinary capacity. We do not find in these rulings any error justifying reversal, if, indeed, there was any. See Tuckerman v. U. S. (C. C. A. 6) 291 Fed. 958, 970, 971.

[6] Five witnesses for defendant testified more or less to the effect that this settlement contract for Memphis delivery was made. Their character for veracity was not attacked, save by the implied attack that always comes when witnesses are flatly disputed with regard to matters where there is small chance of innocent mistake. Defendant then offered the evidence of witnesses to show the good character and reputation of the first five. The court refused to admit this testimony. It is conceded that, under the general rules governing the conduct of trials, such evidence would not be admissible; but it is said, with seeming accuracy, that the Tennessee rule, established by its Supreme Court, is to the contrary. Therefore, if the trial court was bound to follow the Tennessee rule on this point, there was error which might well be thought material. Seemingly the precise point was decided by this court in Louisville & Nashville R. R. Co. v. McClish, 115 Fed. 268, 269–271, 53 C. C. A. 60. In an opinion by Judge Day, it was held that this state rule in Tennessee was not applicable to the federal courts, and that in those courts such testimony would not be received. It is true that it has been said, sometimes with vagueness, that state rules of evidence prevail in the federal courts; but we do not think the passing comment by this court to that effect in American Co. v. Sloan, 248 Fed. 251, 253, 160 C. C. A. 329, was intended to overrule the express decision in L. & N. R. R. v. McClish. It is not easy to see how the receiving or excluding of such evidence as that involved here is not one of those matters pertaining to the conduct of the trial, which are left to the discretion of the trial judge. See discussion in American Co. v. Sloan, supra, and in Ellicott v. Vogt (C. C. A.) 267 Fed. 945, 948.

[7, 8] The principle that written contracts cannot be varied by parol does not, in our judgment, apply to the proofs offered by the

vendor to show that by "corn" in this contract the parties meant corn of the current crop, which would be going on the market from defendant's elevator before and during October, rather than old corn which has less moisture and commands a higher price; but the effect of this evidence, if it had been received and adopted, could only be to make the market price of new corn, at the time of the breach, the standard of comparison in computing damages. In this aspect, any error on the subject was nonprejudicial. There was no evidence substantially indicating that the minimum measure of damages, using this true and smaller standard of comparison, would have led to a smaller verdict than the one which was rendered.

[9] Defendant presented some requests as to the appropriate action of the jury, if it found that the November contract of settlement was made. They were not given in form, nor, defendant says, in substance. We think the subject became immaterial. Under the general charge of the court, it is entirely clear that the verdict of the jury amounts to a finding that the November settlement was not made.

[10] Other complaints of error do not require specific attention, save one: The court, in instructing the jury, expressed its own opinion about the facts and the credibility of the respective witnesses so forcefully and presented the evidence so far in an augmentative way, disparaging defendant's theory, that, under ordinary circumstances, we should feel compelled to reverse. It would not be profitable to go far into the details of this criticism. We had occasion to consider rather exhaustively the limits of the trial judge's rights in this respect in Tuckerman v. U. S., 291 Fed. 958, 965, and Wallace v. U. S., 291 Fed. 972, 974, and we think those limits were somewhat transgressed here—"unconsciously too far" (291 Fed. 973). We have concluded, however, that under the circumstances, and with due regard to the spirit of section 269 of the Judicial Code, as amended February 26, 1919 (Comp. St. Ann. Supp. 1919, § 1246), this criticism does not justify a new trial.

We have pointed out that the verdict reached was inevitable and does no more than plain justice, unless the November contract—an affirmative defense—was established by the burden of proof. That contract, if made, involved a concession which plaintiff was not obliged to make. Before the final break, a written contract was offered by plaintiff to defendant for signature, which was precisely what defendant claimed the oral contract had been, save that it specified "Chicago or Memphis." Defendant refused to sign for this reason. Since it provided only for "shipment to," not "delivery at," defendant's sole stated reason for not signing strongly suggests that it preferred to try for a cash settlement. Faced by a verdict which only prevents defendant from profiting by its own breach of contract, we are not willing to direct a sixth trial on account of the error in the charge.

The judgment is affirmed.