## Richmond.

FRY v. LESLIE.

January 8th, 1891.

1. SEDUCTION—*Infancy.*—Plea of infancy is no bar to action for damages for seduction. And unless a plea is put in by bill of exceptions, it is no part of the record.
2. IDEM—*Evidence—Letters—General reputation—Defendant's testimony.* — In action for seduction defendant's letters to the plaintiff's daughter relative to the charge, are admissible; but the hearsay testimony of witness, not acquainted with plaintiff's general reputation for chastity, and her mere loose language and immodest remarks to other young men are inadmissible; and where defendant fails on examination in chief to give details of liberties taken by her with him on night of seduction, such details are properly excluded when offered on re-examination.
3. PRACTICE AT COMMON LAW—*Verdict—Interest.*—Where verdict does not give interest, it is to be computed from date of verdict.
4. IDEM—*Statute of limitations—Plea—Instructions.*—Where plea of this statute has been rejected, it is not error to refuse to instruct as to its effect.

Error to judgment of the circuit court of Loudoun county, rendered October 26, 1890, in an action of trespass on the case, wherein Julia B. Leslie was plaintiff, and Harrison S. Fry was defendant. The action, which was commenced on the 1st day of March, 1889, was for the seduction of the plaintiff's daughter. The declaration contains two counts. The first charges that the defendant, on the — day of August, 1887, did debauch and carnally know the plaintiff's daughter, whereby she became pregnant, and, in the course of nature, was delivered of a child; that in consequence thereof the plaintiff was for a

long time deprived of the comfort and services of her said daughter, who was her servant, under twenty-one years of age and unmarried, and that she was obliged to expend a large sum of money, to-wit: $100, in and about the nursing and care of her said daughter, and in and about the delivery of the said child, etc.

The second count is almost, *verbatim*, like the second count in *Clem* v. *Holmes*, 33 Gratt., 722, which followed the form of the second count in *Lee* v. *Hodges*, 13 Gratt., 726, from which, also, the form given in 4 Rob. Pr., 626, was taken.

The transcript states that the following plea in abatement was filed at rules, to-wit:

"And the defendant in this case, by his attorney, comes and says that the plaintiff should not have or maintain her action aforesaid against him, because he says that the said defendant is an infant under the age of twenty-one years; and this he is ready to verify. Wherefore he prays judgment whether the plaintiff should have or maintain her action aforesaid against him."

This plea was signed and sworn to by Charles H. Fry, but who Charles H. Fry is the record does not disclose.

At the ensuing April term the following order was entered:

"This day came the parties by their attorneys, and the plaintiff moved the court to strike out the plea of the defendant, filed at the rules in this case, and the matters of law arising thereon being argued, it is ordered that said plea, not being sufficient in law, be stricken out; to which ruling of the court the defendant excepted. And thereupon John H. Alexander is assigned guardian to the infant defendant to protect him in this suit, who thereupon pleaded not guilty, to which plea the plaintiff replied generally. And thereupon issue was joined, and the case is continued."

At the following (October) term, to-wit: on the 23d day of October, 1889, the following order was entered:

"This day came the parties by their attorneys, and the de-

fendant by John H. Alexander, his guardian *ad litem*, tendered his further plea of 'not guilty within one year,' and the matters of law thereon being argued, it is considered by the court that said plea is not sufficient in law, and that the same be rejected; to which ruling of the court the defendant excepted."

On the 25th of the same month, and at the same term, the following order was entered:

"This day came the parties by their attorneys, and the defendant, having now reached his majority—that is to say, the age of twenty-one years—pleaded not guilty in one, year and infancy; and thereupon the plaintiff, by her attorney, objected to the filing of said last two pleas, and the same being argued, it is considered by the court that said pleas are insufficient in law, and that the same be rejected; to which ruling of the court the defendant excepted, and issue was joined upon said plea of not guilty."

A jury was then sworn, and the parties went to trial. In the progress of the trial sundry exceptions were taken by the defendant to rulings of the court, the first of which was to the admission in evidence of two letters from the defendant to the plaintiff's daughter, written whilst he was away at school in Rockingham county, to-wit: one dated the 16th day of February, 1888, and the other the 8th day of March, 1888—the date of the alleged seduction having been proven to have been early in August, 1887.

The first letter is as follows:

"Va. Normal, Feb'y 16, 1888.

"Dear Lizzie,—I received your note from Dr. Dan last eve and also your letter this eve, and God! when I read it I nearly went crazy, and I am not much better now, and, of course, will befriend you now; and, upon the honor of a gentleman, will do anything to help you. You have no idea how it troubled me; and, dear Lizzie, you have my entire sympathies, and I will help you. Oh! why did you not write sooner and tell

me of it? As far as the money is concerned, that is but a small matter—anything to keep you from disgrace. I also rec'd a letter from Dan this eve. He said he did not like to ask you questions concerning it. But, Lizzie, you must tell him everything. Do not be discouraged; there is still great hope; others have had to suffer and endure the same thing, and when it is over they were the same, and it was never known. Do not tell your mama if you can help it. Take care not to go out so that so many can see you, and I think all will be well. Lizzie, as far as coming home is concerned, it will do no good; my presence will not accomplish anything.

"As I must now write to Dan, I must close. Write to me often, and tell me all. I must close now.

"From your friend,

"H.

"Excuse mistakes, as I had not time to consider.

The second letter is as follows:

"Bridgewater, M'ch 8th, 1888.

"Dear Lizzie,—I have had a long talk with Dr. I do not see how I am to come home now without awakening suspicion, and setting the whole community on the watch. Dr. told me that marriage was the quickest way out, but it was not the only one. He said there were houses in Balto and Washington where, for pay, they would take care of a woman; never ask her name, where she came from, or anything, except, Can you pony? and if that is answered in the affirmative, the whole thing is attended to, and the child put in an orphan asylum, and no bother to any one. Now, this last seems to me by far the best plan. Whatever the expense attached, I will bear; and if you think it will help you, I will be willing to meet you in the city, and stay near you until the trouble is over. As for the first plan, just think of it; how that would mar all my future; I would have to stop school, lose every

advantage that an education would assure me, and forego every chance to make anything out of myself. Besides, what would you think of me as a common laborer after the future we both look to? You would be even more dissatisfied than I, and our married life would be misery itself. You do the last. Get Dr. to get you an address in Washington or Balto. Write to me when you go there, and I will try and be with you, and also do my best to meet any expense. As you said your mama was going to inform papa of it, God only knows what he will do; but I feel sure he will help me in meeting all expense. You seemed so anxious for me to come home. As I have told you before, it will do no good, and only arouse suspicion. I have not shown this to Dr., but if you see proper, you may do so. Hoping you will see the advantages of my plan, and that all will work well, I am,

"Your friend,

"HARRY.

"P. S. Be sure and write by return mail, and tell me all in regard to the matter."

The jury, after hearing the evidence, returned a verdict for the plaintiff for $2,000 damages, whereupon the defendant moved for a new trial, but the motion was overruled, and judgment entered on the verdict. He then applied to this court for a writ of error and *supersedeas*, which was allowed.

*J. W. Foster* and *J. H. Alexander*, for plaintiff in error.

*C. H.* and *R. H. Lee*, for defendant in error.

LEWIS, P. (after stating the case) delivered the opinion of the court.

1. The first assignment of error, which is that the circuit court erred in striking out the plea of infancy filed at rules, is not well taken. Even if the plea were before us, as a part

of the record, the objection could not be sustained. This is an action of *ex delicto,* as every action by a parent founded upon the seduction of his or her daughter must be. 4 Min. Insts., 440; *White* v. *Campbell,* 13 Gratt., 573; *Parker* v. *Elliott,* 6 Munf., 587; S. C. Gilm , 33. Such is the appropriate form of the action at common law, and our statute, now carried into section 2896 of the Code, which provides that "an action for seduction may be maintained without any allegation or proof of the loss of the service of the female, by reason of the defendant's wrongful act," merely affects the *quantum* of proof. The action itself remains as it was, *i. e.,* it belongs to the same class of actions as before the statute was passed. *Lee* v. *Hodges,* 13 Gratt., 726; *Clem* v. *Holmes,* 33 Id., 722.

Hence, in such a case, the plea of infancy is of no avail, for an infant is liable for a tort—that is, an injury not arising out of a breach of contract—just as an adult is. Accordingly, in *Lee* v. *Hefley,* 21 Ind., 98, which was an action for seduction, it was held that the answer of the defendant, that at the time of the commission of the act he was an infant, constituted no defence, and was, therefore, demurrable; and such is the well-settled doctrine of the common law. 1 Min Insts., 495; *Cooley, Torts,* 103; *Conklin* v. *Thompson,* 29 Barb., 218. Besides, the defence of infancy, being a personal privilege, cannot be interposed by a stranger, as seems to have been the case here. *Keane* v. *Boycott,* 2 H. Bl., 511. An infant defendant, moreover, must appear by guardian *ad litem,* and not by attorney. 1 Chit. Pl., 428; 1 Min. Inst., 432, 475.

But the plea is no part of the record. It was stricken out, and a plea that is stricken out by the court, is as though it had never been tendered, unless it is made a part of the record by a bill of exceptions, or by an express order of the court; and if it is not a part of the record, then the action of the court in striking it out, is not a subject of review in the appellate court, as nothing *dehors* the record can be looked to or considered. In this respect a plea stricken out stands upon

the same footing as a rejected plea, as to which the rule is well settled.

In *White* v. *Toncray*, 9 Leigh, 347, certain pleas tendered by the defendant were rejected without any exception to the action of the court being taken, and the question afterwards arose, whether they were a part of the record, which could be brought up by *a certiorari*. It was held that they were not. The court said that merely placing them among the papers in the case did not make them a part of the record, and that they could have been made so only by a bill of exceptions, or by a special order of the court, identifying them, and setting forth on the order-book the reasons for rejecting them. It was said, moreover, that by not excepting, the defendant must be presumed to have acquiesced in their rejection, and that the presumption was they were rightly rejected, as the court was not called upon to sign a bill of exceptions in which the reasons for its action would have been stated. See also *Harrington* v. *Haskins*, 1 Rob., 624; *Bowyer* v. *Kervitt*, 2 Gratt., 193; *Roanoke Land and Imp. Co.* v. *Karn & Hickson*, 80 Va., 589; *Morrisett's Case*, 6 Gratt., 673; *Lawrence's Case*, 86 Va., 573; *Offtendinger* v. *Ford*, Ibid., 917.

In the present case, it is true, an entry on the order-book states that to the action of the court in striking out the plea the defendant "excepted." But that was nothing in effect, but "saving the point," so to speak, and having the evidence of the fact entered on the record. It certainly cannot perform the office of a bill of exceptions, and although the plea (or rather, what purports to be the plea,) is copied into the transcript by the clerk, that does not supply the defect. The record proper, as Prof. Minor says, consists merely of the pleadings in the case, the issue, the impanelling of the jury, the verdict, and the judgment; and it is not within the province of the clerk to add to the record. 4 Min. Insts , 742; *Roanoke Land and Imp. Co* , v. *Karn, & Hickson, supra.*

A case in point is *Scott* v. *Lloyd*, 9 Pet., 418. In that case

the defendant's counsel objected at the trial to a certain question being put to a witness, and upon his objection being overruled, as was stated in the record, he excepted. The supreme court, however, speaking by Chief Justice Marshall, said: "Although the defendant's counsel objected to the question, and said he excepted to the opinion of the court, no exception was actually prayed by the party, or signed by the judge. This court, therefore, cannot consider the exception as actually taken, and must suppose it was abandoned."

To the same effect is *Pomeroy's Lessee* v. *Bank of Indiana*, 1 Wall., 592. In that case one of the parties, as appeared from an entry in the minutes of the case, excepted at the trial to a certain ruling of the court, and afterwards claimed the benefit of the exception in the supreme court. But his contention was not sustained, the court saying that such an entry could only be regarded as evidence of the right of the party seasonably to demand a bill of exceptions, and that it was not the same thing as a bill of exceptions, and had never been so considered in any jurisdiction where the rules and practice of the common law prevail. See also *Young* v. *Martin*, 8 Wall., 354.

2 and 3. This view of the subject is not only decisive of the first assignment of error here, but equally so of the second and third assignments, which relate to the rejection of the plea of the statute of limitations, tendered by the guardian *ad litem*, and of the pleas, one of infancy, the other of the statute, afterwards tendered by the defendant himself upon attaining his majority.

4. The next objection, which is founded upon the defendant's first bill of exceptions, is to the action of the court in admitting in evidence the two letters from the defendant to the plaintiff's daughter, written whilst he was at school in Rockingham county, and set out in full in the bill of exceptions. The ground of this objection, as stated here, is that there was nothing in the case to show that, when the letters

were written, the defendant knew anything of any improper conduct on her part in his absence, or of her actual condition except from her own letters, and *non constat* she was not pregnant by another man. This objection is clearly without merit. The letters not only do not assert the defendant's innocence, but, on the contrary, they contain the strongest implied admissions, at least, of his guilt. They discuss plans for the concealment of her shame, one of which was marriage; and to this the only objection mentioned was, not the character or impurity of the girl, but the cutting short of his education, and the consequent loss of the advantages in life which an education would give him. "What would you think of me," he asks her, "as a common laborer? You would be even more dissatisfied than I." So, although he tells her he had been advised that marriage was "the quickest way out of it," he concludes that the best way was for her to adopt another plan that had been suggested to him, which was for her to go to a house in Washington or Baltimore, to be there delivered, and where no questions would be asked. "You do the last," he writes her, "and write me when you go, and I will try to be with you," etc.

There is nothing in the record as to any improper conduct on her part with any one in the defendant's absence, and if such had been the fact, that could not have affected the admissibility of the letters, however it might have affected their weight in the estimation of the jury, whose province it was to weigh the evidence.

5. The next question relates to the exclusion of certain evidence. It appears from the second bill of exceptions that, at the trial, the defendant's counsel asked a witness, introduced by him, and who stated that he did not know the general reputation for chastity of the plaintiff's daughter, whether he (the witness) had stopped his son from visiting the plaintiff's house. The counsel at the same time stated that his purpose was to show that the witness had done so because of what he

had *heard* of the unchaste or immoral character of the females of the house, including the plaintiff's daughter. The court sustained an objection to the question, and, as we think, correctly. The evidence was not only hearsay, but was designed to affect third persons, whose characters were not involved in the issue, and was, therefore, rightly excluded. *Bate* v. *Hill*, 1 C. & P., 100 (11 Eng. C. L. 329).

6. It is stated in the third bill of exceptions that the defendant himself was examined as a witness, and gave evidence tending to prove that on the night of the alleged seduction, whilst taking a buggy-ride with plaintiff's daughter, and after they had returned from the drive, she took certain liberties with him, the details of which he forbore to mention, as he said, out of consideration for her. It is also stated that, on cross-examination, the plaintiff's counsel undertook to discredit the defendant's testimony, whereupon, on re-direct examination, his counsel asked him to state in detail what were the liberties taken with him to which he had referred. To this the plaintiff's counsel objected, and the court sustained the objection, being of opinion that the evidence sought to be elicited was properly evidence in chief, and because the court and counsel on both sides wished, as far as justice to the parties would permit, to repress the merely gross details of the case.

We are of opinion that this ruling was correct. We do not perceive how the credit of the witness could be sustained merely by giving details of the case which had not been referred to in the cross-examination, and, besides, the rule is that a witness, cannot, in this stage, be examined as to any new facts, which do not tend to explain the subject of the cross-examination. If, in such a case, says Starkie, "a question as to any material fact has been omitted upon the examination in chief, the usual course is to suggest the question to the court, which will exercise *its discretion* in putting it to the witness." 1 Stark. Ev., Pt. II (Metc. ed ) 150; 1 Greenl. Ev., secs. 467, 431.

Nor is this in conflict with the rule announced in *George* v. *Pilcher*, 28 Gratt., 299.

7. The next assignment of error arises upon the defendant's fourth bill of exceptions, which states that witnesses were introduced by the defendant to prove loose language and immodest remarks by the plaintiff's daughter to young men visiting her, and also to prove specific acts of impropriety on her part, not going to the extent of cohabitation with any other man, all prior to the alleged seduction ; which evidence the court excluded.

The evidence was offered, and it is contended it ought to have been received, to prove not only the general bad character of the plaintiff's daughter, but her want of purity and innocence.    But was it admissible for that purpose ?

There is no-doubt that in an action for seduction the general character of the female for chastity is involved in the issue, and may, therefore, be impeached by general evidence. The defendant is also allowed to show, in mitigation of damages, particular acts of unchastity on her part with other men, prior to her alleged seduction, and even wanton acts, or loose conduct, though not amounting to unchastity, as in *Verry* v. *Watkins*, 7 C. and P. 308 (32 Eng. C. L. 520,) in which case a witness was allowed to testify that the plaintiff's daughter had indecently exposed her person to him.    And, upon the same principle, evidence has been held admissible to prove an admission by the woman that she had allowed a certain man to take indecent liberties with her.    But evidence of mere immodest remarks, or the like, not connected with any immoral act, is not within the rule; such evidence being too remote, and, therefore, incapable of affording any safe or reasonable presumption as to the point involved in the issue, which is the previous chastity of the female, and not merely whether she was of a modest and refined nature.    A woman may sometimes make immodest remarks without being unchaste.    Such evidence is, therefore, calculated to mislead the jury ; and,

moreover, the plaintiff is not bound to be prepared to meet it. 2 Greenl. Ev., secs. 577, 579; 1 Taylor, Ev., sec 356.

As the action for seduction is founded on the relation of master and servant, the *gist* of the action at common law is the loss of service. It is not easy, therefore, to see how, upon principle, independent of statute, anything but the loss of service could ever have been properly taken into consideration in estimating the damages. The rule, however, has long been settled that in an action by a parent, or by one standing *in loco parentis*, the jury may consider not only the loss of service, but the wounded feelings of the plaintiff, and find accordingly. And now by our statute, which dispenses with proof of loss of service, or any allegation of such loss, a recovery may be had upon the last-mentioned ground alone, although the relation of master and servant is still essential to the maintenance of the action. Indeed, for a long while prior to the statute, the allegation of loss of service has come to be regarded, both in England and this country, as in some measure a fiction—a mere technical form through which the infamy was presented to the court. 2 Rob. (new) Pr., 561; *Hewit* v. *Prince*, 21 Wend., 80; *Lee* v. *Hodges*, 13 Gratt., 726; *Terry* v. *Hutchinson*, L. R., 3 Q. B., 602; *Blanchard* v. *Ilsley*, 120 Mass. 487; 4 Am. Dec., 403.

Hence, the appellant contends that the fullest inquiry into the antecedents of the female, including as well her impurity of mind as of body, ought to be permitted, as affording the only just basis for a recovery on the ground of mental anguish or loss of comfort. In other words, that whatever tends to prove impurity of mind prior to her seduction, is no less admissible, in mitigation of damages, than evidence of actual unchastity. But without stopping to inquire whether this position is or is not a logical deduction from the rule above mentioned, it is enough to say that the rule as to the evidence in such cases has never been carried to that extent,

and we do not feel authorized to extend it beyond the limits we have indicated.

Reference in this connection is made to the case of *Wood* v. *State*, 48 Ga., 192. But we do not understand that case as deciding anything in conflict with these views. That was a criminal prosecution under a statute of Georgia making it an offence to seduce "a virtuous unmarried woman," and one of the questions in the case was as to the meaning of the word "virtuous." The trial judge charged the jury that a virtuous woman, within the meaning of the statute, was one who had never had illicit sexual intercourse prior to her alleged seduction, and this ruling was approved by two judges out of three. It was also held that although the law presumes virtue, yet that the want of it may be inferred from circumstances, and, therefore, that evidence of wanton acts on the part of the prosecutrix, prior to her alleged seduction, though not amounting to unchastity, was admissible upon the question of her virtue. So that the proposition, contained in the opinion of one of the judges, that only modest and pure-minded women are chaste or virtuous, was not sanctioned by the court.

In *White* v. *Murtland*, 71 Ill., 250, a witness was asked whether he was acquainted with the disposition of the plaintiff's daughter, and if so, to state whether or not she was a pert, forward girl. But the question was held improper, on the ground, among others, that it called for no acts, but the mere opinion of the witness as to her disposition, and that she might have been both pert and forward without being lewd.

In *Bracy* v. *Kibbe*, 31 Barb., 273, a witness was asked whether he knew of any acts of a lewd and lascivious character on the part of the plaintiff's daughter prior to her alleged seduction, and it was held that the question was proper. But a question asked the same witness as to what her conduct generally with young men was, was not allowed to be answered, and no point as to the correctness of this ruling

seems to have been made in the appellate court, although objected to at the trial.

As to the offer in the present case to prove "specific acts of impropriety not going to the extent of cohabitation," it is enough to say that the facts in relation thereto are not set out in the bill of exceptions with sufficient fullness to enable us to decide upon them. The acts sought to be proved are not stated, and we must, therefore, presume they were not such as that evidence of them · was admissible, since everything is to be presumed in favor of the correctness of the ruling of the circuit court until the contrary is shown. *Harman* v. *City of Lynchburg,* 33 Gratt., 37.

8. Objection is next made to the refusal of the court to give two instructions to the jury as to the effect of the statute of limitations. But the instructions were irrelevant, and, therefore, rightly refused, because the statute, when relied on as a defence, must be pleaded, and here, as we have seen, there was no such plea in the case. (See, however, upon the subject of the operation of the statute in an action for seduction *Clem* v. *Holmes,* 33 Gratt., 722.)

9. This disposes of all the errors assigned by the appellant. The appellee, however, assigns an error to her prejudice, under the ninth "rule of the court, which is, that the judgment fails to give interest on the sum found by the jury; and this position is well taken. The statute is express and imperative that "if a verdict be rendered which does not allow interest, the sum thereby found shall bear interest from its date, and judgment shall be entered accordingly." Code, sec. 3390.

The judgment will, therefore, be amended in this particular, and, as amended, it will be affirmed.

JUDGMENT AMENDED AND AFFIRMED.