## FRANKLIN SUGAR REFINING CO. v. LURAY SUPPLY CO., Inc.

(Circuit Court of Appeals, Fourth Circuit. April 17, 1925.)

No. 2326.

I. Witnesses ⟨⟨⟩⟩414(1)—Evidence held admissible to sustain character of contradicted witness.

Under the law of Virginia, as established by decision, testimony in support of the general reputation of a witness for truthfulness is admissible, where his testimony is contradicted on a matter as to which he could not be mistaken.

2. Courts ⟨⟨⟩⟩365—Federal courts follow state decisions as to admissibility of testimony.

A federal court is bound by and should follow the decisions of the highest court of the state on the subject of the admissibility of testimony.

3. Evidence ⟨⟨⟩⟩357—Letters written after final conclusion of negotiations held not admissible.

Letters to defendant, urging it to accept deliveries of sugar under contracts, in consideration of an extension of time for delivery and payment, written after defendant had positively refused such acceptance under certain of the contracts, though not answered, *held* not admissible as evidence of its assent to extension of time for delivery under the other contracts.

In Error to the District Court of the United States for the Western District of Virginia, at Harrisonburg; Henry Clay McDowell, Judge.

Action at law by the Franklin Sugar Refining Company against the Luray Supply Company, Inc. Judgment for defendant, and plaintiff brings error. Affirmed.

See, also, 6 F.(2d) 214.

Irvin G. Craig and Thomas B. Gay, both of Richmond, Va., for plaintiff in error.

D. O. Dechart, of Harrisonburg, Va. (W. V. Ford, of Luray, Va., and John T. Harris, of Harrisonburg, Va., on the brief), for defendant in error.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

WADDILL, Circuit Judge. Plaintiff in error, hereinafter referred to as plaintiff, instituted its action at law in the United States District Court for the Western District of Virginia against the defendant in error, hereinafter called the defendant, to recover for an alleged breach of five certain contracts entered into between them for future delivery of sugar, as therein set out. The declaration consisted of five counts, each covering one of the contracts. At the November term, 1923, a verdict was rendered in favor of the plaintiff against the defendant upon the first four counts, and in favor of the defendant on the fifth count. Defendant thereupon moved the court to set aside the verdict on the first four counts, and plaintiff to set it aside as to the fifth count. The court sustained the latter motion, and set aside the verdict against the defendant under the fifth count, as it did also the verdict on the fourth count

in favor of the plaintiff, and entered judgment in favor of the plaintiff against the defendant on counts 1, 2, and 3, from which decision the defendant sued out its writ of error to this court, which, at the present term, has rendered judgment affirming the District Court's decision. 6 F.(2d) 214.

The court set aside the judgment and awarded a new trial as to counts 4 and 5, and the case is now before us to review certain rulings of the District Court made on the new trial thus ordered.

The facts in the case, briefly, are that the plaintiff, with its principal place of business in Philadelphia, Pa., was engaged in the business of refining and selling sugar; and defendant had its principal place of business at Luray, Va., where it was engaged in the wholesale grocery business, and purchased large quantities of sugar from plaintiff. During the year 1920, in the months of May and June, the defendant, through plaintiff's agent, Beery, entered into the five contracts for the purchase of sugar, including that covered by the two counts, to wit, contract No. 180, dated May 28, 1920 (assortment June 14, 1920), for the equivalent of 114 barrels of sugar, at the base price of 22½ cents per pound, delivery during August, 1920, or as soon thereafter as possible, being the contract covered by the fourth count of the declaration, and contract No. 1990, dated June 4, 1920 (assortment June 14, 1920), for the equivalent of 114 barrels of sugar at the base price of 22½ cents per pound, delivery during September, 1920, or as soon thereafter as possible, being the contract covered by the fifth count. Deliveries under each of said counts were withheld at defendant's request, as claimed by plaintiff, such request being made under the fourth count on the 24th of August and the 20th of September, and under the fifth count on the 24th of August and 3d of September, 1920, with the result, as claimed by plaintiff, that the contract in each count was repudiated altogether by the defendant, causing loss, as claimed by plaintiff, to it of $3,307.71 under the fourth count, and the sum of $4,285.26 under the fifth count, for which defendant is liable.

The defendant's case, briefly, was that no request was ever made to withhold shipments under said contracts, and that, on the contrary, plaintiff was duly notified that defendant would comply with said contracts, and accept shipments thereunder, and that plaintiff failed entirely to make deliveries under the contracts.

This was the issue presented, and the conflict in the testimony was sharply drawn as to who was responsible for the alleged breaches of the contracts covered by said two counts, and upon whom the losses arising therefrom should fall. The jury returned a verdict in favor of the defendant, upon which the court entered judgment, from which this writ of error was sued out.

The assignments of error relate especially to the ruling of the court on the admission and exclusion of evidence, the court's failure to instruct a verdict in favor of the plaintiff, its error in giving and refusing instructions, and for entering judgment on the verdict. These will be considered in the order named.

[1] First. The action of the trial court in the admission of evidence respecting the reputation of the defendant's witnesses Ford and Harnsberger, for truth and veracity, is most earnestly pressed as a reason for reversal of the decision of the District Court; the plaintiff's position being that nothing had occurred that warranted the introduction of testimony in support of the witnesses named, and, on the contrary, there was a mere conflict of testimony between them and plaintiff's witnesses, and that in such circumstances supporting evidence was not proper to be introduced, unless it could be shown that the statements of the witnesses sought to be sustained were disproved, with the direct object and purpose of impeaching their testimony.

The District Judge in his opinion briefly summarizes the conflict in testimony as follows:

"Mr. Frazier's appearance, his manner of testifying, and the statements made by him created a strong belief in his truthfulness. In addition to this was the undeniable fact that there was no earthly reason why the plaintiff did not ship a car in August and another in September, unless it was Frazier's belief that Ford and Harnsberger had asked, and he had granted, a delay in shipment until they should request it. Moreover, McLaurin's deposition had some tendency to corroborate Frazier's evidence. On the other hand, Ford and Harnsberger could by no reasonable possibility have been mistaken. They testified as to the one and only interview they had ever had with Frazier or with McLaurin. The matter of these interviews was of very great importance to Ford and Harnsberger. Forgetfulness on their part was simply beyond the range of reasonable possibility. As a practical ne-

cessity their testimony was either knowingly untrue, or was in strict accordance with the facts. The result is that the veracity of Ford and Harnsberger was as effectually put in issue by the contradictory testimony of Frazier and McLaurin as it could have been by any possible method of cross-examination. Because Ford and Harnsberger could by no reasonable possibility have been mistaken, the contradiction of their testimony by Frazier and McLaurin certainly bred some suspicion of their veracity, and a removal of such suspicion was a prerequisite to the possibility of a verdict for the defendant. If there can be such a thing as an attack on the character of witnesses for veracity by mere disproof of their statements by conflicting testimony by other witnesses, then there was such an attack at the trial of this case."

This presents for our consideration what is the rule in Virginia on the subject of the introduction of testimony of the character in question, and whether this court is not bound by and should follow the Virginia rule, whether it is or is not in harmony with the weight of authority. The highest court in Virginia, in its leading case on the subject, George v. Pilcher, 28 Grat. 299, 315, 26 Am. Rep. 350, speaking through Judge Burks, lays down the rule as follows; the several positions being numbered for convenience:

"We are not aware that the precise question passed upon by these decisions has ever come before this court for determination until now, and, in the conflict of authorities in other states, we are called upon to declare the true rule in Virginia; and we are of opinion that, whenever the character of a witness for truth is attacked, either (1) by direct evidence of want of truth, (2) or by cross-examination, or (3) by proof of contradictory statements in regard to the material facts, or (4) by disproving by other witnesses material facts stated by him in his examination, or (5) in general whenever his character for truth is impeached in any way known to the law, the party calling him may sustain him by evidence of his general reputation for truth. The rule as we declare it has, we believe, been generally regarded as the true rule by the bench and the bar in this state, and has been generally followed in the practice."

The learned judge of the court below was convinced that he was bound by the ruling of the highest court of the state, and that, under it, the testimony of the witnesses of-fered in evidence to prove the good reputation of Ford and Harnsberger was properly admitted. In this conclusion, we fully concur.

Counsel for plaintiff earnestly insists that this is not the correct interpretation to be placed upon the decision in George v. Pilcher, and, on the contrary, that a fair interpretation is that evidence to support the veracity of witnesses can only be introduced where the contradicting testimony was offered, not with a view of proving the particular fact in issue, but of impeaching the witnesses' credibility. In this view we cannot concur, as its adoption would, from our viewpoint, in effect modify and change this decision of the Court of Appeals of Virginia, respecting a subject entirely within its control, and which has stood for half a century without serious or material departure therefrom, and is the rule governing and accepted by its courts; the same having, in their opinion, worked and proved most satisfactory. The decisions of the Court of Appeals of Virginia since George v. Pilcher down to a comparatively recent date, at least impliedly, fully recognize the doctrine in that case. Steptoe v. Pollard (1878) 30 Grat. 689, 705; Fry v. Leslie (1891) 87 Va. 269, 279, 12 S. E. 671; Ches. & O. R. Co. v. Fortune (1907) 107 Va. 412, 416, 59 S. E. 1095; Sims v. Commonwealth (1922) 134 Va. 736, 750, 115 S. E. 382.

[2] The fact that this court is bound by and should follow the decisions of the highest court of the state on the subject of the admissibility of testimony is in our opinion beyond controversy, and we are required so to do as well by statutes of the United States (R. S. §§ 721, 914 [Comp. St. §§ 1538, 1537]), as by the decisions of its courts. McNeil v. Holbrook, 12 Pet. 84, 9 L. Ed. 1009; Vance v. Campbell, 1 Black, 427, 17 L. Ed. 168; Conn. Mut. Life Ins. Co. v. Union Trust Co., 112 U. S. 250, 5 S. Ct. 119, 28 L. Ed. 710; Bucher v. Cheshire R. R. Co., 125 U. S. 55, 8 S. Ct. 974, 31 L. Ed. 795; Nashua Savings Bank v. Anglo-American Co., 189 U. S. 221, 228, 23 S. Ct. 517, 47 L. Ed. 782; Central Vermont R. R. Co. v. White, 238 U. S. 507, 35 S. Ct. 865, 59 L. Ed. 1436, Ann. Cas. 1916B, 252; Hinds v. Keith (1893; C. C. A. 5th Cir.) 57 F. 10, 6 C. C. A. 231; Stewart v. Morris (1898; C. C. A. 7th Cir.) 88 F. 461, 32 C. C. A. 7, and 89 F. 290, 32 C. C. A. 203; Pooler v. United States (1904; C. C. A. 1st Cir.) 127 F. 519, 521, 62 C. C. A. 317;

American Agricultural, etc., Co. v. Hogan (1914; C. C. A. 1st Cir.) 213 F. 416, 130 C. C. A. 52; American Issue Pub. Co. v. Sloan, 248 F. 251, 160 C. C. A. 329; Myers v. Moore-Kyle Co. (1922; C. C. A. 5th Cir.) 279 F. 233, 25 A. L. R. 1.

We are not unaware that the Circuit Courts of Appeal for two circuits, the Sixth and the Eighth, have held that the federal courts are not bound to follow the decisions of the highest courts of the state in which they are sitting as to the admissibility of testimony. Louisville & Nashville Railroad v. McClish, 115 F. 268, 53 C. C. A. 60; West Tennessee Grain Co. v. J. C. Shaffer (C. C. A.) 299 F. 197, and Chicago & Northwestern Railway Co. v. Kendall, 167 F. 62, 93 C. C. A. 422, 16 Ann. Cas. 560.

[3] Second. The court's ruling in excluding from consideration by the jury the letter of August 28, 1920, from W. E. Buchanan, manager of plaintiff's sales department, to the defendant, is excepted to, as is also its ruling in respect to the letter of September 7, 1920, from J. H. McLaurin, president of the Wholesale Grocers' Association, to the defendant, to the effect that the letter, in the light of that of August 28th, did not operate as an estoppel on the part of the defendant to make the defenses interposed, because defendant failed to notify plaintiff that the proposed extension contained in the letter of August 28th was not satisfactory to it.

These questions were raised as well upon the motions thus made, as upon the request for instructions to the jury, and the court will consider them together. Reference to the testimony will for a moment be made. The defendant's president, Harnsberger, and vice president, Ford, had an interview on the 24th of August with Frazier, vice president of plaintiff company, in Philadelphia, and insisted that the contracts for July deliveries had been canceled, and that their company was only bound and at that time had to consider contracts for August and September deliveries. Plaintiff positively refused to assent to its contention, or to agree that the same had taken place, but proposed an extension of the time of deliveries, and agreed to extend reasonable credit to that end. Defendant's representatives expressly refused to assent to the proposition to extend the July contract, but avowed its purpose to comply with the terms of the orders for August and September deliveries, and informed plaintiff they were not interested in the proposed extension, as the July

contracts had already been canceled and were inoperative, and no longer binding, but, upon the solicitation of plaintiff's vice president, Mr. Frazier, agreed to take up the whole subject with their company upon returning home. They also saw President McLaurin, of the Wholesale Grocers' Association, in New York on that or the next day, and he was advised of the status of affairs, as understood by the defendants.

Immediately upon defendant's representatives arriving home, on the 27th of August, pursuant to understanding, the matter was taken up with their board of directors, and the entire subject fully explained to the board, which declined to withdraw cancellation of the July deliveries, and promptly on the morning of that day, wired plaintiff at Philadelphia as follows: "Our board declines to withdraw cancellation for July delivery." On that same day, defendant informed McLaurin by letter, referring to the interview in New York, of the action of the board. On the 28th of August, 1920, plaintiff, acting through its sales agent, Buchanan, acknowledged the receipt of the telegram from defendant, and in reply stated and reiterated plaintiff's understanding of the contracts in question, and concluded: "It is not our intention to embarrass you by forcing deliveries at this time, but we do wish you to keep in mind your obligations under these contracts, and, just as soon as you are in position to take in these sugars, advise us," and on the 7th of September, McLaurin, in reply to plaintiff's communication to him of the 28th of August, wrote defendant that his understanding was that plaintiff had advised defendant of its willingness to extend the contracts, etc., and in effect urged defendant to accept plaintiff's suggestion of taking their offer of assistance in carrying out the contracts.

This was what plaintiff offered to do at the Philadelphia meeting, through Vice President Frazier, and also what plaintiff's letter of August 28th showed their then willingness to do. But these questions of securing extensions of July deliveries, and asking the assistance of plaintiff in order to do so, was just what defendant's witnesses insist they promptly refused to accept; they assuring plaintiff's vice president, Mr. Frazier, that they were not interested in that feature of the case, and their action in this respect was sanctioned by defendant's board of directors on the 27th of August, the day prior to the letter of the 28th renewing the suggestion, and after plaintiff had received

the telegram saying defendant company declined to withdraw cancellation of the July shipments, and the McLaurin communication of the 7th of September was nearly 10 days after the defendant's positive refusal to accept the terms suggested, and of which McLaurin was advised by letter of August 28, 1920.

In the light of these facts, the letter of 28th of August from the plaintiff had no proper place in the record, and could only operate as an effort on the part of the plaintiff to bolster up and maintain its position respecting a transaction which had been concluded, and the letter from McLaurin of the 7th of September could only be used for a like purpose, and in no manner bound plaintiff as to any suggestions it might make; nor was defendant estopped by its failure to again inform plaintiff of its position respecting the suggestions contained in either of said letters, since they were only what had been from the first proposed by plaintiff and rejected by defendant, and the latter was under no legal obligation to make further reply to either of said communications, nor was plaintiff in error warranted in assuming that the position of the defendant was other than it had been from the start.

Third. Plaintiff, by instructions 1 and 2, asked the court for a specific instruction to the jury upon counts 4 and 5 of the declaration, covering the August and September deliveries, and excepted to instruction No. 3, as given by the court, because as matter of law plaintiff's letter of August 28th operated as an estoppel against the defendant in interposing the defense in question, and that likewise, under instruction No. 4, the same letter and that of September 7, 1920, from McLaurin, and the failure of the defendant to disaffirm the position taken in each of said letters, operated as an estoppel against the defendant making the defenses sought, and the plaintiff was entitled for that reason to an instructed verdict under each of said counts.

The court was manifestly right in refusing to instruct a verdict generally for the plaintiff, since the merits of the case, from our view, turn upon the correct version of whether the defendant asked for and secured an extension of the August and September deliveries. Upon this there was a positive conflict of testimony, dependent on the view the jury took of the same, and hence the motion to instruct generally should have been denied.

Likewise, and for the reason stated in the last preceding paragraph of this opinion, an instructed verdict should not have been given upon the estoppel theory, as requested. The burden of proving estoppel was upon the plaintiff. 21 C. J. p. 1250, § 267; 10 R. C. L. 845. There is nothing in the testimony to support the suggestion that plaintiff was misled by the failure on the part of the defendant to especially repudiate or reply to the suggestions, coming either from plaintiff or Mr. McLaurin, as to the extension of the contracts after they had been rejected by the defendant, and the former, as well as McLaurin, each advised of the fact. 21 C. J. 1154, 1167; 10 R. C. L. § 25.

Fourth. Considering the question of the instructions asked for generally and refused, and those given by the court, the assignments of error are clearly without merit. The instructions given by the court clearly and comprehensively submitted the case to the jury's consideration, to be determined in the light of their ascertainment of the facts, and, as given, are as favorable to the plaintiff as could reasonably be asked, in the circumstances.

For the reasons stated, the rulings of the District Court are free from error, and its action in all respects is affirmed, with costs.

Affirmed.