## LURAY SUPPLY CO., Inc., v. FRANKLIN SUGAR REFINING CO.

(Circuit Court of Appeals, Fourth Circuit. April 17, 1925.)

No. 2306.

**1. Sales ⬅181(11)—Evidence held not to establish breach of contract by seller.**

Under a contract made in May, for sale of sugar for delivery in July, or as soon thereafter as possible, breach of the contract by failure to make delivery until August 19 *held* not established by evidence that the seller made a delivery in July on another contract made in June.

**2. Sales ⬅150(3)—Seller not obligated not to take other contracts.**

A manufacturer, who has undertaken to make a delivery at a definite date in the future or as soon thereafter as is possible, may nevertheless subsequently agree to deliver goods to others at a still earlier date, always provided that at the time he enters into the subsequent contract he has facilities for the supply and delivery of the goods ample to justify his belief that in ordinary course the shipments under the earlier contracts will not be delayed in consequence of his having made and performed a later one.

**3. Sales ⬅332—On refusal of purchaser to accept delivery made, seller may retake and sell property for purchaser's account.**

Under a contract for sale of sugar, delivery to be made to carrier, where the seller made due delivery and the sugar was transported to destination, where it was held subject to the buyer's order, but it denied ownership and refused to accept or pay for the sugar, the seller *held* to have the right, at its election, to retake and sell it, on due notice to buyer, and after crediting buyer with the proceeds to recover from it the remainder of the contract price.

**4. Sales ⬅384(7)—Breach of contract by buyer; measure of recovery after resale by seller stated.**

Where, on the wrongful refusal by the buyer to accept sugar delivered under a contract, the seller retook and sold it fairly, and for the best price obtainable, the measure of its recovery for breach of the contract is the difference between the amount realized and the contract price.

In Error to the District Court of the United States for the Western District of Virginia, at Harrisonburg; Henry Clay McDowell, Judge.

See, also, 6 F.(2d) 218.

John T. Harris and D. O. Dechert, both of Harrisonburg, Va. (W. V. Ford, of Luray, Va., on the brief), for plaintiff in error.

Thomas B. Gay, of Richmond, Va. (Irvin G. Craig, of Richmond, Va., on the brief), for defendant in error.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

ROSE, Circuit Judge. This case grows out of sales of sugar in May and June, 1920. The defendant in error, the Franklin Sugar Refining Company, in the court below, sued the Luray Supply Co., Inc., the plaintiff in error at this bar. For brevity they will be referred to as the buyer and seller, respectively.

The action, as brought and tried in the District Court, was upon five separate contracts of different dates, in May and June of 1920, for the sale and purchase of various lots of sugars. Upon two of these agreements the court instructed a verdict for the seller. The other three it left to the judgment of the jury. Upon two of these the latter found for the seller, and upon the remaining one for the buyer, which moved for a new trial. The court was of opinion that the verdict upon two of these contracts, one in favor of the buyer, and the other in favor of the seller, could not stand as in its view of the evidence, they were mutually inconsistent. The buyer urged that under such circumstances it was entitled to a new trial upon all five, but the court held that so drastic an order was unnecessary and would involve a waste of time and money in retrying issues which had been fairly presented and passed upon. To this conclusion of the court error was assigned. No authority in support of that assignment has been cited. We have thought it unnecessary to inquire whether any can be found. The new trial ordered as to the two contracts has been had. It resulted in a verdict and judgment for the buyer, which we have affirmed for reasons stated in an opinion filed simultaneously with this. 6 F.(2d) 218. The eminently sensible course taken by the District Court has hurt nobody.

There are 43 other assignments of error, 27 of which relate to rulings upon the admission or rejection of testimony, and one to the court's action in striking out a special plea of the buyer that the seller was a foreign corporation and had not been admitted to do business in Virginia. The remaining 15 assail the action of the court in giving or refusing instructions. The buyer's briefs make no direct reference by number to any of these assignments. We cannot discover that a word is said about many of them, and, so far as we can recall, counsel in argument at this bar were equally silent upon them. The legal propositions upon which others are based were stressed in both the printed and oral discussion of the case, but the task was left to us to apply what was said to the particular assignment or assignments to which it had reference. Under such circumstances, there is always danger that we may overlook something which counsel regards of moment. The risk is obviously greater when the assignments are as numerous as they are in this case, and it is clear that some of them have been tacitly, although not expressly, abandoned. Such seems to have been the fate of all the 27 of them, having reference to testimony, except the two numbered 31 and 32, respectively. At all events, we do not see that the buyer was entitled to complain of any of the rulings to which the other 25 refer.

No attempt was made to show us that the court erred in holding the seller was entitled to sue in a court of the United States, sitting in Virginia. We are satisfied that it was. It is ably argued that the court should have granted, instead of refusing, some of the instructions asked for by the buyer. Into that question it is unnecessary for us to go. As to two of the three contracts before us, the court instructed a verdict for the seller. It left the third to the jury, because it admitted certain evidence which at the time it thought had raised an issue of fact as to that particular contract. When, in connection with the motion for a new trial, it had occasion to reconsider, at leisure, the rulings it had made, it concluded it had erred in admitting the evidence now being passed upon. Had that been excluded, the court thought it would have been bound to instruct a verdict for the seller on that contract also. If it was right, as it will presently appear we think it was, it should have refused all the instructions requested by the buyer, whether as an abstract legal proposition they were, or were not, sound.

[1] The case, therefore, resolves itself into two questions—First, was the seller enti-

tled to an instructed verdict on the three contracts? and, second, was there any prejudicial error in the court's excluding testimony referred to in the thirty-first and thirty-second assignments of error? We will consider these in the reverse order to that in which we have stated them. The contracts in question, as the court construed them, called for delivery in July or as soon thereafter as possible. The deliveries were not made or tendered until August. The sellers attempted to show that earlier deliveries were impossible because of strikes of switchmen and of stevedores and because of an insufficient car supply. The buyer thereupon offered to prove that on or about June 11th the seller had contracted to sell a carload of sugar to the Harrisonburg Grocery Company, for delivery as soon as possible, and that the sugar was delivered under the contract on July 27th. On May 30th the seller had confirmed the two contracts upon which the court instructed a verdict for it. By their terms, delivery was to be made in July, or as soon as possible thereafter. The court held that, after the seller had made them, it had the right to agree with others to deliver in June, up to its full capacity to refine and ship, as that might then be reasonably anticipated, unless there was something in the situation which suggested that by so doing it was subjecting the buyer to an unreasonable risk of delay in delivery. The court thought that the bald fact that a contract accepted on June 11th for shipment as soon as possible was delivered on July 27th was not sufficient to support an inference that the seller had treated the buyer unfairly in failing to ship to it until August 19th and 23d, respectively. We are of like mind.

The evidence which the learned court below subsequently concluded had been wrongly admitted concerned a shipment of sugars to the Boyer Grocery Company, of Woodstock, Va., near a junction point of the Baltimore & Ohio and the Southern Railroads. The contract in pursuance of which it was made was confirmed by the seller on June 8, 1920. The confirmation as delivered to the Boyer Company was silent as to the date of delivery. The buyer therefore contends that it must be conclusively presumed that the contract was nothing more than one for delivery within a reasonable time. It bases this contention, in part, upon the evidence that the broker who had negotiated the sales to the buyer was in the practice of putting the date of delivery upon the confirmation order. The sale to the Boyer Company was not made through him, but by a Philadel-

phia broker. No evidence was offered as to whether he was or was not in the habit of adding the delivery date to the confirmation slip. The seller presented testimony which was uncontradicted, except by such inferences as might reasonably be drawn from the confirmation to the Boyer Company, that all the contracts which it made in May and June, 1920, were for shipment in a specified month or as soon as possible, and it understood the agreement with the Boyer Company was for shipment as soon as possible. Nothing in the evidence suggested any reason why the seller should have wished to favor the Boyer Company at the expense of the buyer and there is no question open between the Boyer Company and the seller.

At the time of delivery the railroads shipping from Philadelphia were not willing to send their cars to points off their own lines. Under these circumstances the court thought that no reasonable inference could be drawn that the Philadelphia broker followed the practice of putting the date of delivery upon the confirmation order or that, because a car could be procured for a shipment over the Baltimore & Ohio, one would have been equally available over the Norfolk & Western to the buyer. It therefore concluded that the evidence as to the Boyer transaction was without sufficient probative force to justify its admission. We see no good reason for differing with the trial court upon such a question.

[2] We come now to the vital issue in the case: Was the seller entitled to an instructed verdict on the three contracts involved in this appeal? That inquiry resolves itself into two branches. Would the uncontradicted facts in evidence show that the seller was entitled to a verdict for something, and, if so, was the proper measure of damages applied? None of the sugar was shipped in July. Under two contracts, the shipments were made on August 19th and 23d, respectively. No other sugar was ever shipped, the buyer having unequivocally notified the seller that it would not accept any deliveries. The buyer's contention is that the seller has failed to show that it was not possible for it to ship the sugar, or some part of it, earlier than it did. Practically all the evidence which bears on this question was offered by the seller. The buyer, it is true, put on the stand certain witnesses to testify concerning it; but they proved nothing which raised any issue of fact for the jury.

A review and analysis of the seller's evidence on this part of the case could not be made within reasonable limits of space, and

would be altogether useless as a guide in future litigations. It shows that the seller, in the face of many difficulties growing out of the so-called outlaw switchmen's strike, the strike of stevedores, frequent railroad embargoes, and insufficient car supply, and of the bad condition of many of the cars which the railroads were still trying to use, did all that it was practically possible promptly to ship the sugars it had sold.

One issue of law, and one only, is here involved. Subsequent to the sales made to the buyer for delivery in July, or so soon thereafter as possible, the seller made large sales of sugar to be delivered as soon as possible and deliveries of such orders were made in advance of deliveries to the buyer. The court held that the testimony for the seller proved, without contradiction, that at the time it took these orders for delivery as soon as possible it had no reason to suppose that by so doing it would delay the deliveries for July already bargained for. It held as a matter of law that a manufacturer who has undertaken to make a delivery at a definite date in the future, or so soon thereafter as is possible, may nevertheless subsequently agree to deliver to others goods at a still earlier date, always provided that, at the time he enters into the subsequent contract, he has facilities for the supply and delivery of the goods, ample to justify his belief that in ordinary course the shipments under the earlier contracts will not be delayed in consequence of his having made and performed a later one. We think this is clearly the law, and from the nature of the case must be. We are convinced that the learned court below was right in its view that the seller made out its case to the extent, at least, of showing that upon proper pleadings the buyer was liable to it.

[3] The buyer, however, insists that in this case the seller may not recover. It says that deliveries made under the terms of the contracts were completed when the sugar was given to the railroad carrier. At that time both title and possession passed to the buyer. The seller then became entitled to sue the buyer for the full price, and that was and remains the limits of its right. What afterwards happened to the sugar itself, it says, was none of the seller's concern. When the seller subsequently took possession of the sugar and resold it, there was a tortious conversion of the buyer's property, upon which no right of action in favor of the seller can be based. To apply such a rule to the facts of this or any similar case could be justified only on the ground that its correctness was so clearly settled in the law as to leave no room for consideration of how disastrous its application might frequently prove.

Cases in plenty have been cited in which it was held that when, as here, the contract provides that the seller shall deliver the goods to a common carrier, and makes no inconsistent reservations, the carrier becomes the buyer's agent, and when the goods come into its custody, both title and possession pass to the buyer. Subject to certain rights remaining in the seller, such as stoppage in transitu, etc., there can be no question that the law is as the buyer states it. It is, however, necessary to keep in mind what actually happened in the instant case. The sugars reached their destination. The buyer wrongfully insisted that they were not its, and was clear in its refusal to have anything to do with them, or to pay for them, either then or at any other time. The seller, when it became evident that the buyer would not recede from this position, and that a long drawn out lawsuit was inevitable, repossessed itself of the sugars and sold them for the protection of both parties, and to diminish the loss which must fall upon one of them. The court below held that the sale was made as promptly as it could fairly have been, and for as high a price as could be obtained. Our attention has been called to no case in which it has been decided that the seller may not, under such circumstances, recover from the buyer the difference between the price the latter agreed to pay and the amount the seller managed to save out of the wreck.

We think the right of the seller so to act was placed upon the proper ground, when we said in Frederick v. American Sugar Refining Co. (C. C. A.) 281 F. 305, that the seller had the right to endeavor to realize what could be preserved from the abandoned purchase, upon due notice to the purchaser, and to sue for the residue in cases of loss. That is the common-sense way of dealing with the situation. It cannot hurt any one, and almost always will save much to one or both of the parties. To give it legal sanction involves no practical difficulty, unless the goods shall be resold for more than the contract price. That will seldom happen, for, when the market conditions make it possible, buyers will seldom refuse to take the goods, and, if they do, sellers are usually ready enough to have them back. It will be easy to deal with the overwhelming majority of the extremely rare cases in which the net return to the seller from the resale exceeds the price the buyer should have paid it, for it is hard to conceive of any of them in which

one party or the other will not have done or said something which will determine his rights, and in consequence those of his adversary. It is to be remembered that we are here concerned with cases in which the buyer has definitely refused to have anything to do with the goods, and with those cases only.

[4] Nevertheless the buyer insists that, in directing the verdict for the difference between the contract price and the net proceeds of the resale, made by the seller, the learned court below applied an erroneous measure of damages, or took from the jury a discretion which was properly theirs. It is scarcely questioned that under the previous decision of this court in Frederick v. American Sugar Refining Co., supra, and in Gilbert Grocery Co. v. Howell (C. C. A.) 289 F. 474, and of the various decisions of the Supreme Court of Appeals of Virginia, cited in them, as we understood those decisions, the court below was right. It is, however, urged that, since we handed down our opinions in those cases, the language used by the highest court of the state, in Mayflower Mills Co. v. Hardy, 138 Va. 138, 120 S. E. 861, has demonstrated that either we were wrong in our interpretation of the earlier Virginia cases, or that they have now been overruled. We shall not stop to ask whether the decision goes as far as the buyer contends. It was made a number of months after the instant case was brought. We do not think it necessary to inquire whether, in view of that fact, we are required, or even justified, in reversing the conclusions to which in earlier cases we have come. Burgess v. Seligman, 107 U. S. 33, 2 S. Ct. 10, 27 L. Ed. 359. There is no occasion to go into such nice questions, for we agree with the learned court below that upon the uncontradicted evidence the resales were fairly made, and as promptly as was consistent with an honest wish to obtain the best price.

It follows that the judgment below was right, and must be affirmed.